GORDON A. GUNDAKER REAL ESTATE CO., INC., d/b/a Gundaker Realtors/Better Homes and Gardens, Plaintiff,

v.

Harry J. MAUE & Carolyn K. Maue, Defendants–Cross–Claimants–Respondents,

and

George E. Williamson & Susan D. Williamson, Defendants–Cross–Claimants–Appellants.

No. 56711.

Missouri Court of Appeals, Eastern District, Division Three.

June 26, 1990.

Frank D. Keefe, Ellisville, for appellants.

Donna Aronoff Smith, Steven H. Leyton, St. Louis, for respondents.

SATZ, Presiding Judge.

In this interpleader action, plaintiff, Gordon A. Gundaker Real Estate Company (Gundaker), paid into the trial court's registry an earnest money deposit of Twenty Thousand Dollars ($20,000). The interpleader-defendants, claimants to the earnest money, are parties to a residential sales contract: Harry J. and Carolyn K. Maue, the buyers, and George E. and Susan D. Williamson, the sellers.

The basic issue before the trial court was the meaning and application of a termite inspection clause in the residential sales contract between the buyers and the sellers. Following a bench trial, the trial court dismissed the interpleader-plaintiff, Gundaker, and the court awarded the earnest money deposit to the buyers. The sellers appeal. We affirm.

We review this court tried case under the well known principles established by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and Rule 73.01(c). We defer to the credibility determinations made by the trial court, and we accept as true the evidence and permissible inferences favorable to the prevailing party and disregard contrary evidence and inferences. *E.g. Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App. 1986).

In August, 1985, the buyers offered to buy the sellers' house for $310,000.00. The offer was made on a form "Contract of Sale of Real Estate," printed for sale by the St. Louis Printing and Legal Forms Company. Typed onto the form was the provision:

The property [sic] is contingent upon a building inspection satisfactory to the purchaser who will order and pay for same, this includes a termite inspection.

The sellers rejected this offer.

Subsequently, the buyers engaged a real estate agent who prepared another offer. This offer was $335,000.00 and was made on a form "Residential Sale Contract," "approved" by the "Real Estate Board of Metropolitan St. Louis." The sellers accepted the offer. The buyers deposited $20,000.00 in earnest money with Gundaker, and the closing date was set.

The sales contract contains a building and termite inspection clause which provides that the

purchaser, at his option and expense, shall have the right to obtain a *written inspection report* from a ... warranted or insured home inspection service of the improvements, including, but not limited to, *termite infestation or damage*, ... and shall furnish a copy thereof to seller or his agent *stating in writing any hidden defects* unacceptable to purchaser. (emphasis added)

This clause further provides that within five days of receipt of such a report, the seller must notify the buyer whether the seller will correct the defects. If the seller does not respond or if the seller notifies the buyer that the defects will not be corrected, the buyer may terminate the sales contract and have the earnest money deposit returned. The contract also provides that if the sale is not closed by the date fixed for closing, "owing to the failure of performance by purchaser", the earnest money will be forfeited to the sellers.

The buyers hired Stopke Pest Control ("Stopke") to conduct a termite inspection of the sellers' house. Among other things, Stopke's termite inspection report states that a thorough inspection was done, there were no visible signs of termite infestation and the "owner" stated the house had been pretreated for termites. The buyers submitted this report to the sellers with a written request that proof of pretreatment for termites be provided within five days. When the sellers did not provide proof of pretreatment, the buyers terminated the contract. This interpleader action followed.

On appeal, the sellers argue the trial court erred in admitting evidence extrinsic to the sales contract to determine the buyers' understanding as well as the correct meaning of the terms of the contract. This evidence, the sellers argue, violated the

parol evidence rule. This argument is misdirected and, thus, misses the mark.

For our purposes here, we will assume the terms of the termite inspection clause are unambiguous and the evidence in question was erroneously admitted. The sellers still do not prevail.[1]

Any rational, untrained buyer of a house is concerned about hidden defects in the house; i.e. defects which the buyer, because of lack of training, cannot discover by reasonable inspection. *See, e.g. Smith v. Old Warson Development Co.,* 479 S.W.2d 795, 799 (Mo. banc 1972). Thus, the form sales contract in issue provides the buyer the right to engage a qualified person to inspect the house for hidden defects. If the buyer properly informs the seller of a hidden defect found by the buyer's expert and if the seller does not remedy it, the buyer has the privilege of terminating the contract.

In this case, Stopke inspected the house for the buyers. Its written report states that "a thorough termite inspection was made", "no signs of termites were found in areas accessible to visual inspection" and "[t]he owner stated that the residence has been pretreated for termites." The report sets out the "conditions of the inspection and . . . recommendations that . . . apply." The pertinent condition and recommendation state that, if the house has been "previously treated or pretreated for termites, it is not possible to determine, from observation alone, the extent of the treatment or if the treatment was adequately done." The report recommends "the seller be contacted to obtain the details of the treatment, such as: the treatment date, company, any warranty information, copies of the contract and warranty, etc."

"When this information is unavailable" [the report continues], the situation is similar to knowing other repairs were done to the property in the past and the repair work is no longer under warranty and no one can determine who completed the repairs. You have to trust the previous owner saw to it the job was done properly in the past. At this point, no further termite treatment is recommended, . . . ."

From this, it is obvious Stopke's written report does not expressly state whether the sellers' house is infested with termites, the hidden defect in question. A narrow and literal reading of the written report shows no "termite infestation," as referred to in the sales contract, and such a reading would not meet the contract requirement that the purchaser state "in writing any hidden defect." Therefore, reading Stopke's report literally means the buyers were not privileged to terminate the sales contract, and their termination was a breach.

But, we must take language as it is and people as they are. Language always carries a sub-text meaning to its literal text. To us, the language of Stopke's report tells the reader the report is conditioned on at least two significant conditions: (1) a determination of whether the sellers' house had in fact been pretreated for termites as "the owner" had stated, and (2) if the pretreatment had been done, a determination of the details of that treatment from which the effect of the treatment could be determined.

Testifying for the buyers, Mr. Richard Stopke, President of Stopke, stressed that proof of pretreatment was a critical condition of his company's inspection report. Although the visual inspection of the house revealed no actual evidence of termite infestation or damage, Mr. Stopke emphasized that this did not mean that the house was free of termites. He explained that pretreatment is the most effective way to

---

1. In Point II of their brief, the sellers state: THE COURT ERRED IN FINDING THAT [THE BUYERS] HAD A CONTRACTUAL RIGHT TO DEMAND PROOF OF PRETREATMENT FOR TERMITES IN THAT THE CONTRACT IS UNAMBIGUOUS AND PROVIDES THAT THE PROPERTY IS TO BE ACCEPTED IN ITS PRESENT CONDITION.

Understandably, this statement was not developed in the Argument portion of the brief. Typed on the front face of the sales contract is the statement: "Contingent upon building and termite inspections as seen on the rear of the contract."

avoid termite infestation. Without pretreatment, he said, any house has an 80% chance of eventual termite infestation. More important, he said, pretreatment is particularly necessary for houses built on wooded lots, as was the case here. Visual inspection, he continued, was not an acceptable substitute for proof of pretreatment, especially since, as noted in the report, the slab foundation and cluttered condition of the house prevented even a complete visual inspection. Thus, he said, his inspector did not exercise his discretionary authority to warrant the house as being termite-free. Based upon his inspector's report, Mr. Stopke testified that he would not have purchased the house without proof of pretreatment.

Mr. Stopke did not explicitly testify the conditional report meant that, without proof of pretreatment, it was highly probable the house was infested with termites at the time of closing. That is, however, a reasonable inference from his testimony.

The sellers made only two objections to selected portions of Mr. Stopke's testimony, both based on relevancy and, as to the selected portions, both properly overruled. The sellers do not challenge these rulings on appeal.

Without proper objection, the trial court relied on Mr. Stopke's testimony as well as his company's written report for its Findings of Fact and Conclusions of Law. The court "found" the house "was built on a concrete slab, was in an area that had been previously covered by woods, and was highly susceptible to termite infestation because of the nature of the construction and the area in which constructed." The court "concluded" the "highly probable termite infestation was a hidden defect within the terms of the sales contract ...", the buyers "had a contractual right ... to demand that the hidden defect of probable termite infestation be cured or corrected by furnishing evidence of the alleged pretreatment for termites", and the sellers failed to do so. (See Appendix)

Admittedly, the sales contract, literally read, provides recourse for termite infestation as a hidden defect and not for a "high probability" of termite infestation as "concluded" by the trial court. The purpose of the termite inspection clause, however, was to ensure that the buyers received a house free of hidden defects. The parties obviously reached their agreement based upon the assumption that the house contained no hidden defects, such as termite infestation. Surely knowledge that it was highly likely that termites had infested the house would have affected, and perhaps even prevented, the formation of this contract. It is therefore only reasonable to conclude that the parties intended for the buyers to have the same recourse if an expert inspection revealed either a certainty or a high probability of termite infestation. Therefore, the trial court correctly concluded that Stopke's report revealing a high probability of infestation was legally equivalent to a report indicating actual termite infestation.

One of the sellers, Mrs. Williamson, did testify that she was told by the original owners that they could not locate written proof of pretreatment. There is no indication, however, that she asked the original owners for the name of the company or person who had performed the pretreatment. The court could, therefore, sensibly have disbelieved Mrs. Williamson's testimony. Regardless of Mrs. Williamson's efforts to locate proof of pretreatment, such proof was essential to removing the high probability of termite infestation. The buyers were, therefore, entitled to terminate the contract without liability.

The trial court's findings and conclusions are consistent with our analysis and with the result we reach. On appeal, our primary concern is the correctness of the trial court's result not the route taken to reach it. *Maryland Plaza Redevelopment v. Greenberg*, 594 S.W.2d 284, 286 (Mo.App. 1979).

Judgment affirmed.

SMITH and GRIMM, JJ., concur.

### APPENDIX

*Findings of Fact, Conclusions of Law and Order*

*Findings of Fact*

. . . . .

12. Purchasers Maues' termite inspector could not determine whether or not the property was infested with an active termite infestation because he could not gain full access to all areas of the property because of the cluttered condition thereof. The termite inspector did not find active termite infestation in the areas that he could inspect. The termite inspector determined that it was not necessary to make further investigation because defendant Susan Williamson assured him that the property had been pretreated for termites. Accordingly, the termite inspector could not guarantee to purchasers that there was no termite infestation of the premises. The building was built on a concrete slab, was in an area that had been previously covered by woods, and was highly susceptible to termite infestation because of the nature of construction and the area in which constructed.

* * * * *

*Conclusions of Law*

* * * * *

3. The highly probable termite infestation was a hidden defect within the terms of the sale contract because of the slab construction in a wooded area, inability to inspect the premises because of the cluttered condition of the premises and the failure to furnish the alleged proof of pretreatment for termites.

4. Defendants Maue had a contractual right under the sale contract to demand that the hidden defect of probable termite infestation be cured or corrected by furnishing evidence of the alleged pretreatment for termites.

5. Defendants Williamson breached the terms of the sale contract by failing to correct the hidden defect by furnishing evidence of pretreatment for termites and defendants Maue were justified in terminating the sale contract by reason thereof. Defendants

Maue were entitled to return of the earnest money.