STATE of Missouri,
Plaintiff/Respondent,

v.

Dwayne Bernard BURNS,
Defendant/Appellant.

No. 54657.

Missouri Court of Appeals,
Eastern District,
Division One.

March 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 22, 1991.

Michael A. Gross, Forriss D. Elliott, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

PER CURIAM.

Defendant appeals a life sentence. The case must be retried because the trial court erred when it misdirected the jury by an oral instruction given after the jury began deliberations. The instruction may have coerced a verdict. There is no basis to determine that it did not coerce a verdict.

The trial involved two charges. Count I, robbery first degree, "in that on September 7, 1985 in the County of Jefferson, State of Missouri, the defendant forcibly stole U.S. Currency in the possession of Henry Cullen, and in the course thereof defendant caused serious physical injury to Henry Cullen." Section 569.020 RSMo 1988. Count II, assault first degree "in that on September 7, 1985 in the County of Jefferson, State of Missouri, the defendant knowingly caused serious physical injury to Henry Cullen by striking his head with a glass object." Section 565.050 RSMo 1986. Additional counts involving charges from the same event were not tried.

Henry Cullen and his wife testified defendant and an unknown male invaded their house trailer on September 7, 1985. Cullen and his wife knew defendant. Either defendant or his companion struck Henry Cullen while he slept. The blow broke Cullen's jaw. They also testified defendant took money from Cullen's wallet before they left. Defendant and two friends testified in support of an alibi defense. They told the jury defendant was in St. Louis County at the time just before the alleged robbery and assault occurred.

The operative facts on the coercion of verdict issue are as follows:

1. At 2:05 p.m. the jury retired to consider a verdict on Count I, robbery in the first degree and Count II, assault in the first degree.

2. At 5:40 p.m. the court received a note from the jury which said "[d]o we have a time limit to reach a verdict? If so, what is the limit?"

3. The court announced an intention to read MAI–CR(3d) 312.10, the *Allen*-type hammer instruction to the jury. The state objected because the communication from the jury did not indicate that they were deadlocked. Defendant did not object.

4. At 5:46 p.m. the court read MAI–CR(3d) 312.10 to the jury. It also asked whether "further deliberations would be helpful in this situation?" The response, "[i]t's possible. We are close." The jury resumed deliberations.

5. At 7:17 p.m. the jury returned into open court. Immediately thereafter, without consultation with counsel, the court said *"Ladies and gentlemen of the jury, as you were instructed, you have to return a verdict on each count. You will go back to the jury room and complete your deliberations on Count II."* (The emphasis intended to highlight the issue for decision).

6. At 7:27 p.m. the jury returned.

The jury found defendant not guilty on the charge of robbery first degree. It subsequently found defendant guilty on the charge of assault in the first degree. In defendant's motion for new trial he contends:

[t]here existed inconsistent verdicts in said cause as reported by the jury in that after some five hours and 12 minutes, the jury indicated a verdict but that there was only a verdict rendered as to Count I. The court instructed the jury to return for deliberations because Count II was out of place and out of order and that the jury then returned 10 minutes later with a verdict of not guilty on Count I and guilty as to Count II thus resulting in wholly inconsistent verdicts in this cause.

This claim of error is not the same as the decisive claim of error before this court. It is reviewable only as a matter of plain error.

On appeal defendant contends:

The trial court erred in instructing the jury that it was required to reach a verdict on each count of the information because that instruction coerced a guilty verdict under Count II, in that (1) the instruction improperly embellished the "hammer" instruction previously administered by the trial court and (2) the instruction incorrectly directed the jury without qualification to deliberate until a verdict had been reached under Count II.

The question of whether a verdict was coerced is a matter of plain error. By definition coercion of a verdict is a matter affecting substantial rights and involves issues of manifest injustice or miscarriage of justice. Rule 30.20.

Defendant did not furnish this court with a copy of all instructions submitted to the jury. However, where two counts were tried the court certainly gave the jury MAI–CR(3d) 304.12 which instructs the jury "should" return a separate verdict on each count. We know the court gave MAI–CR(3d) 312.10 which instructed the jury "it is desirable that there be a verdict in every case" a juror should respect opinions of other jurors and "endeavor to bring the deliberations of the whole jury to an agreement upon a verdict." However, that instruction also contains words of caution intended to minimize the possibility a juror will be coerced. It also provides "a juror should not agree to a verdict that violates the instructions of the court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt."

■ The subject matter of the oral statement made by the court involved the same matters covered by MAI–CR(3d) 304.12 and MAI–CR(3d) 312.10, the desirability of a separate verdict on all counts and the proper manner of deliberations to reach a unanimous verdict. However, the oral instruc-

tion conflicts with both approved MAI–CR instructions. It contains a statement of fact which is untrue and a statement of law in derogation of the *Allen*-type hammer instruction. Contrary to the oral instruction, the court did not previously instruct the jury it had to reach a verdict on each count. As a matter of law the jury did not have to reach a verdict on each count. The oral instruction was a positive misdirection to the jury.

■ The court spontaneously acted without consulting counsel for either side. It spoke to the jury before any objection could be made by either party. This procedure violates MAI–CR(3d) 312.10, notes on use 3. The oral instruction was the first communication from the court to the jury after it read MAI–CR(3d) 312.10 to the jury. The only intervening events were additional deliberations. The approved instruction contains a caution not contained in the oral instruction. The cautionary language " 'is the crux of the instruction' and is consistent with the basic duty of a juror and the fundamental concept of a fair trial." *State v. Broadux,* 618 S.W.2d 649, 652 (Mo. banc 1981) (quoting *State v. Hayes,* 563 S.W.2d 11, 12 (Mo. banc 1978)). In *Hayes* the court reversed a judgment because the trial court omitted this caveat from its instruction to the jury. A generally approved *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, Hammer Instruction may be impermissibly coercive if it appears that, under the circumstances, the trial court was "virtually directing that a verdict be reached." *State v. McNail,* 767 S.W.2d 84, 86 (Mo.App. 1989). The oral instruction ordered the jury to reach a verdict.

■ Coercion of a guilty verdict constitutes error. *Hayes,* 563 S.W.2d at 12; *McNail,* 767 S.W.2d at 86. A reversal is required if it is conceivable the challenged instruction coerced the jury into returning a verdict and nothing in the record is available to find otherwise. *See State v. Raspberry,* 452 S.W.2d 169, 175 (Mo.1970). The rights of both parties to a fair trial and defendant's right to due process cannot be served if a verdict is coerced, nor can these rights be protected if it is conceivable the verdict was coerced. A coerced guilty verdict is prejudicial.

For a variety of reasons, it is conceivable the verdict on Count II was coerced. First, the verdict on Count II appears to be inconsistent with the verdict on Count I. The verdict on Count I represents a finding defendant was not guilty of causing Henry Cullen serious physical injury and of forcibly stealing Cullen's money. The guilty verdict on Count II represents a finding defendant caused the serious physical injury by the same act rejected by the verdict of not guilty. The state's evidence on both charges consisted of the testimony of Henry Cullen and his wife without the support of any other evidence. Second, the verdict on Count II was delivered so quickly after the oral instruction, which followed hours of deliberations before and after the approved hammer instruction. Third, the misstatement of fact and law contained in the oral instruction is presumptively error. Rule 28.02(f). For that reason, Rule 28.-02(c) directs the court to use approved MAI–CR instructions "to the exclusion of any other on the same subject." Fourth, the use of MAI–CR(3d) 312.10 is strictly limited to submission in writing. Notes on use 4 of that instruction are explicit and the requirement is absolute. *State v. Wells,* 639 S.W.2d 563, 568 (Mo. banc 1982).

Reversed and remanded.

GRIMM, Judge.

I respectfully dissent.

On appeal, defendant contends the trial court erred by allowing a witness "to testify regarding his opinion of the veracity" of the victim and victim's wife * "because that testimony impermissibly invaded the fact-finding province of the jury." I disagree, because the trial court did not commit the charged error. Defendant also contends the trial court erred by "instructing the jury that it was required to reach a verdict

---

* At the time the charged crimes allegedly occurred, victim's wife was not yet married to victim. However, by the time of trial, they were married.

on each count" because the "instruction coerced a guilty verdict" on the robbery charge. This point was not preserved and I do not find plain error. I would affirm.

## I. Facts

Victim had known defendant for quite a few years, as they attended junior high school together. In late summer of 1985, they saw each other at a party. Defendant's car "was broke down and he didn't have a place to go." Victim agreed to let defendant stay with him at victim's trailer home. Defendant lived at the trailer approximately a month.

Victim purchased a good motor for defendant's car, as well as other automotive parts. Victim and defendant installed the motor and parts.

Defendant gave victim a $120.00 check for the parts. Defendant told victim "the man's name on the check owed him money and instead of having the check wrote to [defendant] he'd just had the man write it to [victim] instead of it going through him."

Soon after receiving the check, victim and his wife left for the weekend, leaving defendant alone at the trailer. When they returned, defendant and "all of his stuff [were] gone." Wife's stereo was also missing.

The next day, the $120.00 check was returned due to insufficient funds. Victim phoned defendant at defendant's place of employment and told him, "I [need] to be paid for it and ... if I [do not] get paid ... I [am] going to turn it in to the police...."

Defendant promised victim he would get paid. However, victim had not been paid by Friday. So victim called defendant's place of employment. Defendant was not there. Victim told defendant's boss the police would be called if victim did not receive the $120.00.

That evening, while victim and his wife were asleep in bed, he was hit over the head with a vase. Defendant and an unidentified accomplice were in the bedroom. The accomplice had victim's .22 rifle in his hands and was pointing it at victim. De-

fendant said something about victim "violating his rights," and if victim turned the check in, defendant would "go back to jail for it."

Defendant and the accomplice then left, but, according to victim, first took approximately $120.00 out of victim's wallet. Also, they took victim's rifle and telephones, but discarded these items "fifty feet from the house."

At trial, defendant's attorney, Brunson Hollingsworth, questioned why the police did not investigate the scene of the crime. He asked victim the following questions on recross-examination:

Q: You kept the police out of your trailer, didn't you?

A: No, sir. They never asked to come there and look.

Q: They never believed you, did they?

MS. DRUCKER [Prosecuting Attorney]: Object.

THE COURT: Sustained.

Q: Did they tell you that they didn't believe you?

A: No, sir.

A police officer was called in rebuttal. He was asked:

Q: From your experience, did the fact that you did not have a gun to take fingerprints off of or a phone with fingerprints, did that have an effect in terms of the investigation in this case, in your opinion?

MR. HOLLINGSWORTH: I don't believe his opinion is admissible about such a thing.

THE COURT: I think it's appropriate rebuttal. You may answer.

A: No, ma'am.

Q: Why is that?

A: (No response).

Q: Is that because—

MR. HOLLINGSWORTH: Leading question.

THE COURT: Sustained.

Q: Why?

A: I felt—

MR. HOLLINGSWORTH: Leading question.

THE COURT: Not that one. He may answer.

A: I felt that the victim and his girl-friend were being truthful to me.

Q: You interviewed [victim] and observed the injury to him—

MR. HOLLINGSWORTH: I'll object. Move that it be stricken as invading the province of the jury and ask that the jury be instructed to disregard it.

THE COURT: Overruled.

MR. HOLLINGSWORTH: Further, move for a mistrial.

THE COURT: Overruled.

Approximately two-and-one-half hours after jury deliberations began, the jury sent a message to the court: "Do we have a time limit to reach a verdict? If so, what is the limit?" In chambers, the court indicated its intention to give an instruction patterned after MAI–CR 3d 312.10, commonly called the "hammer" instruction. Although the State objected, defense counsel said, "No objection or comment."

Approximately two hours later, the jury returned with a verdict. However, the jury did not reach a verdict on both counts. Without objection, the court said, "Ladies and gentlemen of the jury, as you were instructed, you have to return a verdict on each count. You will go back to the jury room and complete your deliberations on Count 2." Ten minutes later, the jury returned. The jury found defendant not guilty of the robbery charge, but guilty on Count 2, the assault charge.

## II. Testimony Regarding Veracity of Victim

In his first point relied on, defendant alleges "[t]he trial court erred in permitting [a police officer] to testify regarding his opinion of the veracity of [victim and victim's wife] because that testimony impermissibly invaded the fact-finding province of the jury."

The claim of error is narrow. Defendant does not claim the trial court erred in failing to strike the police officer's testimony, or in refusing to grant a mistrial. Rather, the alleged error is "in permitting [a police officer] to testify regarding his opinion of the veracity."

The record discloses defendant emphasized on cross-examination that the police did not examine the check, gun, or telephones for fingerprints. He also pointed out the police did not talk to victim at his trailer.

On rebuttal, the State inquired of the police officer whether the absence of fingerprints had an effect on the officer's investigation. After he replied, "No, ma'am," he was asked, "Why?" Defendant's sole objection was "Leading question." The trial court properly overruled this objection. In my opinion, the trial court did not commit the error raised in the point relied on, and therefore the point should be denied.

### III. Instruction to Jury During Deliberations

Defendant's second point alleges the trial court "erred in instructing the jury that it was required to reach a verdict on each count of the information because that instruction *coerced a guilty verdict* under Count II." (emphasis added). He contends "(1) the instruction improperly embellished the 'hammer' instruction previously administered by the trial court and (2) the instruction incorrectly directed the jury without qualification to deliberate until a verdict had been reached under Count II."

This claim of error was not presented to the trial court. Defendant did not object to the trial court's statement either before or after it was made.

Nor does the motion for new trial contain any reference that the "instruction" (1) improperly embellished the "hammer' instruction," (2) "incorrectly directed the jury," or (3) "coerced a guilty verdict." The only portion of the motion for new trial which relates to this "instruction" says:

That there existed inconsistent verdicts in said cause as reported by the jury in that after some five hours and 12 minutes, the jury indicated a verdict but that there was only a verdict rendered as to Count I. The Court instructed the jury to return for deliberations because Count

II was out of place and out of order and that the jury then returned 10 minutes later with a verdict of not guilty as to Count I and guilty as to Count II thus resulting in wholly inconsistent verdicts in this cause.

In his motion for new trial, defendant begins and ends his allegation with the contention that the two verdicts were "inconsistent verdicts." He did not contend, as now, that the "instruction coerced a guilty verdict." This point is not preserved. Rule 29.11(d). Therefore, only plain error review is accorded. Rule 30.20.

The record discloses that the jury returned into open court with their verdict. It is reasonable to believe the jury verdict forms were handed to the trial judge, as is usual and customary. In examining the verdict forms, the trial judge learned the jury had found the defendant not guilty on Count I, and had failed to return a verdict on Count II.

The trial court then said, "Ladies and gentlemen of the jury, as you were instructed, you have to return a verdict on each count. You will go back to the jury room and complete your deliberations on Count 2."

Defendant argues the trial court's statement was an instruction and as such it lacked the "essential moderating features of the hammer instruction and was impermissibly coercive." I disagree.

Not every statement from a trial judge constitutes an "instruction" as that term is used in Rule 28.02. For example, a trial judge often "instructs" the jury to disregard certain questions and answers, or other matters.

Rule 28.02(a) requires instructions to "the jury [be] in writing." However, numerous other trial court statements are not submitted "in writing" and therefore are not Rule 28.02 instructions. See, e.g. MAI–CR 3d 300.02, 300.04, 300.06, and 300.20.

Rule 28.02 refers to instructions on "questions of law arising in the case that are necessary for [the jury's] information in giving the verdict." Here, the trial court's statement was not a Rule 28.02 instruction.

Defendant did not furnish us with the written instructions given to the jury, nor is the instruction conference in the record. I presume, however, the trial court gave all instructions required by MAI–CR 3d and Rule 28.02. One of those instructions is MAI–CR 3d 304.12, which in pertinent part instructs the jury, "You should return a separate verdict for each count and you can return only one verdict for each count."

When the trial court saw that the jury had completed only one verdict, it realized the jury had not complied with its previous instruction to "return a separate verdict for each count." The trial judge no doubt had this in mind when he told the jury, "[Y]ou have to return a verdict on each count."

I recognize that literally read, the words "you have to return a verdict on each count" is inaccurate. A jury may "hang up" and thus, not return a verdict.

"But, we must take language as it is and people as they are. Language always carries a sub-text meaning to its literal text." *Gordon A. Gundaker Real Estate v. Maue,* 793 S.W.2d 550, 552 (Mo.App.E.D. 1990). To me, the words "you have to return a verdict on each count" merely advised the jury that its work was not complete. Or, in the words of defendant's motion for new trial, "The Court instructed the jury to return for deliberations."

Further, the State's case depended on the believability of the testimony of the victim and his wife. When the jury returned a not guilty verdict on Count I, it reasonably appeared that the jury had not believed their testimony.

And, because the assault and charged robbery occurred basically at the same time, it would not be unreasonable to anticipate similar verdicts on the two counts. Thus, when the trial court advised the jury to complete its deliberations on Count II, the trial court may have anticipated it was going to receive a not guilty verdict on Count II. It stretches reason to a breaking point to believe the trial court "coerced a

*guilty* verdict" (emphasis added) by its statement.

I have no quarrel with defendant's position that coercion of a jury's verdict may be considered under a plain error review. None of the cases he cites, however, are applicable to the facts here. In *People v. Palmer*, 125 Ill.App.3d 703, 81 Ill.Dec. 54, 62, 466 N.E.2d 640, 648 (1984), the challenged language was found not coercive. In *State v. Czachor*, 82 N.J. 392, 413 A.2d 593 (Ct.1980), a modified *Allen* charge was given three times, and this constituted reversible error. And in *Boyett v. United States*, 48 F.2d 482 (5th Cir.1931), the trial judge coerced a guilty verdict by telling the jury that "some of you" do not want to follow the given instructions and they should not have "any great difficulty in arriving at a verdict in this case."

Defendant was not prejudiced by the trial court's statement. The point should be denied.

I would affirm the judgment of the trial court.