STATE of Missouri, Respondent,

v.

Ronnell MOTTLEY, Appellant.

Ronnell MOTTLEY, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 69600, 71475.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 7, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Ronnell Mottley (Mottley) appeals after sentencing on four separate charges. The court imposed sentences for murder in the second degree, assault in the first degree, and two counts of armed criminal action. He argues it was error for the trial court to coerce the jury verdict through its use of the MAI–CR 3d 312.10 "hammer" instruction. He also argues he was denied effective assistance of counsel. Mottley appeals denial of Rule 29.15 relief after an evidentiary hearing.

On September 8, 1994, Sherry Campbell (Campbell) went for a ride with Sharron Detjen (Detjen) in Detjen's red Pontiac Fiero. The women pulled into the parking lot of Reynold's Roadhouse to use a pay phone located in the parking lot. As they parked next to the pay phone, another car pulled into the lot. The driver of the other car began shooting at the Fiero. A shot hit Campbell. Detjen drove to a nearby convenience store to get help. Detjen called the police at approximately 11:31 p.m. The police responded along with paramedics. Campbell was taken to a hospital. She died two days later. Detjen went to another hospital where a bullet was found singed into her hair.

The next day Mottley told Dorian Williams (Williams) he had "capped" two girls in Maryland Heights. Mottley was arrested on September 11, 1994. He told different stories to the police, with at least one version naming himself as the shooter. On October 17, 1994, the grand jury indicted Mottley on four charges: 1) murder in the first degree, in violation of Section 565.020.1 RSMo 1994, a class A felony; 2) assault in the first degree, in violation of Section 565.050 RSMo 1994, a class B felony; and 3) two counts of armed criminal action, violations of Section 571.015.1 RSMo 1994. During Mottley's trial, the murder in the first degree charge was amended to murder in the second degree.

After the jury began its deliberations, it asked several questions of the trial court.

The question relevant to this appeal inquired: "Since we agreed on a verdict on the first count, but after that we have *one* juror who will not vote on Counts II, III, and IV, please advise. Also, we have set the penalty." (emphasis taken).

The trial court asked the jury's foreperson whether any further deliberations would result in a verdict on Counts II–IV. The foreperson responded, "[n]o, I don't believe we could reach a verdict." In response, the judge read the hammer instruction to the jury as follows:

> You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

MAI–CR 3d 312.10.

Before reading the hammer instruction, the court did not discuss its intention to do so with the parties. The jury rendered guilty verdicts on all four of the charges against Mottley.

The trial court sentenced Mottley to consecutive sentences of thirty years imprisonment for the murder in the second degree conviction, ten years imprisonment for the offense of assault in the first degree, and ten years imprisonment for each of the two convictions for armed criminal action. Mottley filed a timely *pro se* motion for post conviction relief under Rule 29.15. He alleged he was denied effective assistance of counsel. After hearing evidence on the motion, the motion court denied relief. We consider the direct appeal and appeal of the 29.15 ruling.

Mottley argues it was error for the trial court to give the hammer instruction because it coerced the jury into rendering guilty ver-

dicts on counts II–IV. Mottley and the state suggest we may review this issue as plain error for manifest injustice or a miscarriage of justice. We find this issue was preserved. The court did not offer defendant notice on the instruction, and the point was preserved in Mottley's motion for a new trial. We find no error.

The decision whether to submit MAI–CR 3d 312.10 is within the discretion of the trial court. *State v. Parson,* 815 S.W.2d 106, 107 (Mo.App.1991). The hammer instruction may be given "when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI–CR 3d 312.10, Notes on Use 2.

The hammer instruction in itself is not coercive. *Parson,* 815 S.W.2d at 107. Defendant must prove jury coercion in order to establish that the trial court abused its discretion in its use of the hammer instruction. *State v. Jones,* 708 S.W.2d 775, 777 (Mo.App.1986). In order to support a finding of abuse of discretion, it must be shown that what was said and done at the time of the trial coerced the verdict. *Parson,* 815 S.W.2d at 107. In the absence of evidence to support a finding a juror capitulated to a verdict not agreed to by choice, the trial court did not err in giving the hammer instruction. *State v. Mitchell,* 811 S.W.2d 809, 814 (Mo.App.1991).

Mottley's point is based on a misreading of the jury's note to the trial court and on an assumption the jury's numerical split and the position of the majority on Counts II–IV was disclosed in the note. Based on this assumption, Mottley argues the issuance of the hammer instruction coerced the "lone holdout" into complying with the eleven other jurors' position. The jury's note will not support this assumption. The note stated "one juror ... will not vote on Counts II, III, and IV." It only reveals a refusal of one juror to vote. That is insufficient to disclose the view or decision of the other eleven on the issue of guilt or innocence. It implies the other eleven jurors are willing to vote or have voted, nothing more.

Mottley also relies on *State v. Burns,* 808 S.W.2d 1 (Mo.App.1991). In *Burns,* we found the hammer instruction "*may be* impermissibly coercive if it appears, that under the circumstances, the trial court was virtually directing that a verdict be reached." *Id.* at 3 (quoting *State v. McNail,* 767 S.W.2d 84, 86 (Mo.App.1989)). (emphasis added). *Id.* The judge in *Burns* instructed the jury that it had to return a verdict on each count. *Burns,* 808 S.W.2d at 2. We reversed because the oral instruction was a positive misdirection to the jury, and it misstated the law. *Id.* at 3. The trial judge in this case did not mistate the law or misdirect the jury. *Burns* has no application here.

In the present case, the trial court did not offer the attorneys an opportunity to make objections before it read the hammer instruction to the jury. In *State v. Starks,* 820 S.W.2d 527, 529 (Mo.App.1991), we recognized a trial court should offer the attorneys an opportunity to make any objection on the record before it gives the hammer instruction. *Id.* at 530. However, the deficiency is not argued and is not a matter of plain error. It was cause for a review on the merits. Point denied.

Mottley argues the Rule 29.15 motion court erred in determining that his trial counsel was not ineffective. It denied relief after an evidentiary hearing. In particular, Mottley claims his trial attorney was ineffective by failing to call two alibi witnesses. On review of a Rule 29.15 motion for post conviction relief, we are limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. *State v. Davidson,* 941 S.W.2d 732, 736 (Mo.App. E.D.1997).

In order to prove ineffective assistance of counsel, "a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced." *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). When defendant disputes his defense counsel's decision not to call witnesses, he must rebut the presumption that counsel's acts or omissions

were sound trial strategy. *Davidson,* 941 S.W.2d at 736–37. A decision not to call a witness to testify as a matter of trial strategy is virtually unchallengeable for the purpose of determining effective assistance of counsel. *State v. Roe,* 845 S.W.2d 601, 605 (Mo.App. E.D.1992).

During the evidentiary hearing, Mottley testified: 1) he gave his attorney the names of witnesses to call on his behalf, including his father and Smith, a friend of his father; 2) he did not give his attorney a last name for one of the witnesses, but gave him several phone numbers where he thought she could be reached; and, 3) he stayed the night at her house. She did not corroborate this final claim during her testimony. Mottley's trial attorney testified he never received information on that alibi witness, and therefore had never contacted her. Mottley's father testified his son came by his apartment around 11 p.m., and while he and his girlfriend talked to his son through the door, they did not let him inside the apartment. Mottley's trial attorney testified that Mottley's father had told him he was asleep for the evening, never saw his son that night, and therefore was unable to say whether or not his son had been to his apartment on the night in question. He also testified Mottley had told him he had knocked on the door at his father's apartment, but there had been no response.

The testimony Mottley argues would have provided a "viable defense" was contradicted by Mottley's trial attorney during the motion hearing and ultimately not believed by the motion court. The finding of the motion court was supported and was not clearly erroneous. Point denied.

We affirm.

AHRENS, P.J., and CRANDALL, J., concur.