**STATE of Missouri, Respondent,**

v.

**David C. BARNETT, Appellant.**

No. 23076.

Missouri Court of Appeals,
Southern District,
Division One.

March 10, 2000.

Motion for Rehearing and Transfer to Supreme Court Denied April 3, 2000.

Application for Transfer Denied
May 30, 2000.

5. The state's motion to strike the affidavit in the appendix of defendant's brief is granted.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea L. Mazza, Asst. Atty. Gen., Jefferson City, for Respondent.

CROW, Presiding Judge.

Appellant, tried by jury, was convicted of statutory rape in the first degree, § 566.032, RSMo 1994, and statutory sodomy in the first degree, § 566.062, RSMo 1994. The jury assessed punishment at ten years' imprisonment for each crime.

The trial court entered judgment per the verdict, running the sentences concurrently. This appeal followed.

Appellant's sole point relied on is:

"The trial court erred and abused its discretion in failing to declare a mistrial after being informed by the jury that one juror 'could not go against her personal feelings about this case' and vote in favor of guilt, in violation of Mr. Barnett's rights to due process of law and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United State Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that by failing to confer with counsel or determining the deadlock of the jury before instructing the jury for a second time to follow the instructions previously given the trial court compelled the jury to return guilty verdicts against Mr. Barnett."

As Appellant does not challenge the sufficiency of the evidence to support the judgment, this opinion need not recount the sordid saga except to report that the victim was a seven-year-old girl.

After deliberating some three and a half hours, the jury entered the courtroom at 3:11 p.m. and presented verdicts signed by the foreperson finding Appellant guilty of both crimes and assessing punishment at ten years' imprisonment for each.

Appellant's lawyer ("Defense Counsel") then said: "I would request that the jury be poled [sic]."

The trial court directed the clerk to poll the jury, whereupon the clerk asked each juror: "[I]s this your verdict?"

Eleven jurors answered, "Yes." One juror, Donna Baker, answered, "No." Then, this:

"[Prosecutor]: Your Honor, on behalf of the state, it's required that it's unanimous.

THE COURT: Yes.

1. The prosecutor may have meant "unani-

[Prosecutor]: Since it was not polled (sic)[ [1] ], I would ask that you instruct the jury to go back and follow the instructions and come back with a unanimous decision.

THE COURT: On the basis of the poll, ladies and gentlemen, your verdicts will be rejected. And I will ask you to return to the jury room and deliberate and return with a unanimous verdict.

Thank you very much.

(The jury returns to the jury room for deliberations at 3:15 p.m.)

(The following proceedings were had outside the presence of the jury.)

[Defense Counsel]: I need to make a motion at this time.

As of this time I would move for a mistrial. Obviously they didn't follow the instructions given, that all jurors must be unanimous. They didn't follow that instruction, and yet tendered a verdict of guilty when in fact all 12 had not agreed upon that sentence [sic]. So, at this time I would move for a mistrial.

I think that any continued deliberations would be—wouldn't be fair deliberations at this point, given what we just heard.

THE COURT: Motion for mistrial will be denied.

(At 3:30 p.m. the following proceedings were had outside the presence of the jury.)

THE COURT: On the record, gentlemen, I have this note from the jury. 'Although the vote was unanimous on both counts, all 12 voting to convict, one juror expressed doubt all during deliberations. However, after further discussions that juror did vote to convict.

'However, during the polling, which was not expected, that juror could not state what she does not truly feel. It is our thought that we would not be able to convince that juror to go against her personal feelings about this case. We mous."

feel that we are unable, for this reason, to not have the same occurrence again.'

*I have sent instructions back in and told the jury to continue to deliberate in accordance with the instructions given.* [ 2]

There is an instruction that I can send to the jury, which I may do shortly, which says that if they agree upon to convict but cannot agree upon punishment, the court can sentence.

I think we should get that instruction prepared and a verdict form prepared to go along with it, which I will send in if they don't return with something shortly.

[Defense Counsel]: I need to inquire as to what the note said. I heard part of the that [sic].

THE COURT: The note says that they—their vote was unanimous to convict. And that's the reason that I'm saying what I'm saying, that—

[Defense Counsel]: But didn't they also say that one juror had doubts throughout the process? I don't know if that goes to the culpability, the guilt/not guilt.

THE COURT: I don't either, and it doesn't say. So that's why I'm inclined to say that this instruction should probably be—

[Prosecutor]: May I see the instruction book, Your Honor?

THE COURT:—should be sent in at some point, yeah.

[Prosecutor]: There are—you're allowed to communicate. And they give some—and you can do this by a note or bring in the jury, as to Count One, has the jury unanimously reached the decision to find the defendant either guilty or not guilty. And they can answer that yes or no.

If the answer is yes, indicate whether you found the defendant guilty or not guilty. And then they answer that.

And if the answer is no, indicate whether if given more time would be able to reach a decision to find the defendant guilty or not guilty.

And then it goes on down to—with questions about punishment. And this instruction is not to be given, the way I read it, until you have made a determination that they are, in fact, hung up over the punishment stage.

THE COURT: And that's why I'm going to wait. That's why I'm going to wait.

[Prosecutor]: We'll go ahead and start preparing it.

THE COURT: But if they—if I think they are hung up—*they've got the instructions back. They have clean instructions. I've told them to deliberate in accordance with the court's instructions.*

If they indicate that they're still hung up, I think this is the next step.

[Defense Counsel]: If I may inquire, does the note that they sent out, the communication, ask for a question to the court or is it just a statement?

THE COURT: It is just a statement.

[Defense Counsel]: I would tender again that I think that one person is expressing her feelings. She certainly didn't feel like she could express them fully back there because she came out here and said no. That, again, any further deliberations would not be fair at this point. I think we should respect the wishes of one juror. And I would again move for a mistrial.

THE COURT: That will be denied.

(At 4:25 p.m. the jury returned with their verdict. And the following proceedings were had.)

---

**2.** The segment of the trial court's comments appearing in italics is italicized to facilitate this court's discussion (later in this opinion) of Appellant's claim of error. A second segment of the trial court's comments, *infra,* is also italicized for that purpose.

THE COURT: Foreperson, hand your verdict to the sheriff, please.

Okay, as to Count One, 'We the jury find the defendant, David C. Barnett, guilty of statutory rape in the first degree as submitted in Instruction Number 6. We assess and declare the punishment for David C. Barnett at imprisonment of [sic] a term of ten years.' Signed by Sam Randolph, foreperson.

Second, as to Count Two, 'We the jury find the defendant, David C. Barnett, guilty of statutory sodomy in the first degree as submitted in Instruction Number 8. We assess and declare the punishment for David C. Barnett at imprisonment for a term of ten years.' Signed by Sam Randolph, foreperson.

Ladies and gentlemen, is this your verdict?

(Jury responds yes.)

[Defense Counsel]: Again, Judge, I would ask that the jury be polled."

The trial court directed the clerk to poll the jury, whereupon the clerk asked each juror: "Is this your verdict[?]"

This time, all twelve jurors answered, "Yes."

The trial court announced the verdicts "will be received." The court then discharged the jury.

It appears to this court from the statement of facts and argument in Appellant's brief that Appellant draws an inference from the transcript that may be incorrect.

According to the transcript, the trial court informed the prosecutor and Defense Counsel at 3:30 p.m. that the court had received a note from the jury. The court read the note aloud, after which the court uttered the first italicized remark (the one beginning "I have sent instructions ... ").

The statement of facts in Appellant's brief, citing that portion of the transcript, avers:

"The trial court called the attorneys to advise them of the jury's message and to inform the attorneys that it had returned to the jury an instruction 'to continue to deliberate in accordance with the instructions given.' "

The argument following Appellant's claim of error, citing the same portion of the transcript, avers:

"Without consulting counsel, the trial court told the jury 'to continue to deliberate in accordance with the instructions given.' "

This court divines from the above-quoted excerpts from Appellant's brief that he believes the trial court, after receiving the note from the jury (and without consulting counsel), instructed the jury—off the record—"to continue to deliberate in accordance with the instructions given." [3] If that be Appellant's understanding of the transcript, he may be wrong.

The transcript does not show the jury was brought before the trial court between the time the court received the note and the time the court told counsel about it, nor does the transcript show the court entered the jury room during that interval. Consequently, if the trial court communicated verbally with the jury during that interval, the trial court would have had to do so without the court reporter recording the event. This court is loath to assume that occurred.

The only other possible method of communication would have been a written instruction from the trial court to the jury directing the jury "to continue to deliberate in accordance with the instructions given." This court's examination of the record has turned up no such instruction.

---

**3.** This court's inference about Appellant's belief is buttressed by the complaint in Appellant's point relied on (quoted earlier) that the trial court failed to confer with counsel or determine the deadlock of the jury "before instructing the jury for a *second* time to follow the instructions previously given[.]" (Emphasis added.)

The legal file contains only the written instructions read to the jury before it retired to deliberate. Nothing in the record even remotely suggests the trial court gave the jury a written instruction during deliberations.

The record does clearly demonstrate the trial court gave the jury one verbal directive during deliberations. That was the one immediately after the first poll, when the trial court said:

> "On the basis of the poll ... your verdicts will be rejected. And I will ask you to return to the jury room and deliberate and return with a unanimous verdict."

Contrary to the inference Appellant evidently draws from the transcript, this court believes the two italicized portions of the trial court's remarks, read together, can reasonably be understood to mean the trial court, after reading counsel the note, was merely reminding counsel that the court, following the first poll, sent the jury back to the jury room and, either then or later, sent into the jury room the written instructions the jury had received before initially retiring. This court believes that scenario is more likely correct than the one apparently embraced by Appellant. However, both are plausible, hence this court, in adjudicating Appellant's claim of error, shall discuss both.

■ As this court believes its scenario is more likely correct, this court shall begin with it. Under it, the outcome of this appeal hinges on whether the trial court's verbal directive to the jury immediately after the first poll constituted reversible error.

■ It is axiomatic, of course, that coercion of a guilty verdict by a trial court constitutes error. *State v. Burns*, 808 S.W.2d 1, 3[3] (Mo.App. E.D.1991). Appellant relies on *Burns* in seeking reversal.

However, as henceforth explained, Appellant's reliance is misplaced.

In *Burns*, as here, the accused was tried on two counts. *Id.* at 1. The jurors in *Burns* deliberated three hours and 35 minutes, then sent the trial court a note asking whether they had a "time limit" to reach a verdict. *Id.* at 2. In response, the trial court read the jury MAI–CR 3d 312.10, characterized in *Burns* as "the *Allen*-type hammer instruction." *Id.* About an hour and a half later, the jurors in *Burns* returned into court and were told by the trial court:

> "Ladies and gentlemen of the jury, as you were instructed, you have to return a verdict on each count. You will go back to the jury room and complete your deliberations on Count II."

*Id.*

Ten minutes later, the jury in *Burns* returned a verdict of not guilty on the first count, and subsequently found the accused guilty on the second. *Id.*

In a per curiam decision with one judge dissenting, the appellate court in *Burns* reversed the conviction. The majority held the trial court, contrary to MAI–CR 3d 312.10, told the jurors they had to reach a verdict on each count. *Id.* at 2–3. That, said the majority, was a "positive misdirection." *Id.* at 3. Furthermore, held the majority, the guilty verdict on the second count was inconsistent with the acquittal on the first, as both arose from the same incident.[4] *Id.*

The difference between *Burns* and the instant case is obvious. The trial court in *Burns* gave MAI–CR 3d 312.10 during the jury's deliberations. That instruction informed the jurors, *inter alia,* that a juror should not agree to a verdict that violates the instructions of the court, nor should a juror agree to a verdict of guilty unless he is convinced of the accused's guilt beyond a reasonable doubt. *Id.* at 2. Some ninety

---

4. A detailed explanation of the inconsistency appears in *Burns*, *id.* at 3, and need not be repeated here.

minutes after giving that instruction, the trial court in *Burns* told the jurors they had to return a verdict on each count. *Id.* The latter admonition clearly conflicted with MAI–CR 3d 312.10.

In the instant case, the trial court never gave MAI–CR 3d 312.10, thus there was no possibility of conflict between that instruction and anything the trial court said. Furthermore, the trial court never told the jurors they had to return a verdict on any count. When the first poll revealed the verdicts presented by the foreperson were not unanimous, the trial court merely rejected the verdicts and *asked* the jurors "to return to the jury room and deliberate and return with a unanimous verdict."

Additionally, the verdicts in *Burns* were inconsistent, whereas in the instant case the jury ultimately returned a verdict of guilty on each count, assessing identical punishment on each.

This court is uncertain whether Appellant believes the trial court's directive to the jury immediately after the first poll was error. A careful reading of Appellant's point relied on suggests Appellant may be hypothesizing error on only the trial court's denial of Defense Counsel's *second* motion for mistrial (the one Defense Counsel made *after* the trial court read counsel the note from the jury).

Be that as it may, this court holds the trial court's directive to the jury immediately after the first poll did not constitute reversible error.

■ When a jury returns a verdict in improper form, it is the trial court's duty to refuse to accept the verdict and require further deliberations until a verdict in proper form is returned. *State v. Lashley,* 667 S.W.2d 712, 715[3] (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Consequently, the trial court in the instant case was obliged to reject the verdicts (as it did) and ask the jurors to deliberate further and return with unanimous verdicts.

It is true, as emphasized by Appellant, that when the trial court took that step, the court knew eleven jurors had just voiced their assent to the guilty verdicts. However, the trial court did not acquire that knowledge by questioning the jurors. The trial court received that information unexpectedly when Defense Counsel had the jury polled. To the foreperson's apparent surprise, juror Baker disclaimed the guilty verdicts.

Confronted by that novel situation, the trial court was constrained to reject the verdicts and ask the jurors to see whether they could, upon further deliberation, reach unanimous verdicts. Appellant cites no case indicating the trial court's directive in those extraordinary circumstances constituted reversible error.

Furthermore, Defense Counsel never objected to the trial court's directive. The thrust of both of Defense Counsel's motions for mistrial was that after the first poll revealed lack of unanimity among the jurors, further deliberation would not be "fair." Pursuing that theme, the motion for new trial filed by Defense Counsel for Appellant asserted that once juror Baker renounced the verdicts, "there was no unanimous decision."

This court is aware of no case holding that an initial lack of unanimity among jurors in a criminal case bars the jurors from later reaching a unanimous verdict. Accordingly, this court holds the trial court did not commit reversible error when, after the first poll, it rejected the verdicts and gave the directive set forth in the transcript. It follows that if this court's assumption of what occurred at trial is correct, there is no basis to reverse the judgment.

■ Having decided that, this court now considers the possibility that the trial court, *after receiving the note,* instructed the jury—either verbally or in writing— "to continue to deliberate in accordance with the instructions given." As explained earlier, Appellant's brief, as understood by

this court, indicates Appellant believes that is what occurred. For convenience, this opinion henceforth refers to the quoted phrase at the end of the first sentence in this paragraph as "the second additional instruction."

The first hurdle encountered by Appellant is that Defense Counsel registered no objection to the second additional instruction.[5] After the trial court read the note to counsel and uttered the two italicized remarks, Defense Counsel moved for a mistrial because, during the first poll, juror Baker disavowed the initial verdicts. Defense Counsel told the trial court it "should respect the wishes" of juror Baker and "any further deliberations would not be fair[.]" Defense Counsel voiced no complaint about the second additional instruction and did not mention it as a ground for mistrial. Furthermore, the motion for new trial filed by Defense Counsel for Appellant raised no issue about the second additional instruction.[6]

■ Because of the omissions identified in the last two sentences of the preceding paragraph, no claim of error regarding the second additional instruction is preserved for review. *State v. Moland,* 626 S.W.2d 368, 370[1] (Mo.1982); *State v. Cook,* 491 S.W.2d 324, 325[2] (Mo.1973). Consequently, the only relief this court may grant in regard to the second additional instruction is the relief authorized by Rule 30.20, Missouri Rules of Criminal Procedure (2000). That rule enables an appellate court, in its discretion, to consider plain errors affecting substantial rights when the court finds manifest injustice or miscarriage of justice has resulted therefrom.

This court finds the second additional instruction caused no manifest injustice or miscarriage of justice.

First, the second additional instruction did not tell the jurors they had to return a verdict. It merely directed them "to continue to deliberate in accordance with the instructions given." The instructions previously given had told the jurors, *inter alia,* that if they were not firmly convinced Appellant was guilty, they must "give him the benefit of the doubt and find him not guilty" (Instruction 4), and that each juror "must decide the case for yourself" (Instruction 11).

Second, the second additional instruction did not conflict with any instruction the jury had already received.

Third, even when the second additional instruction is considered in conjunction with the trial court's verbal directive immediately after the first poll, there is no manifest injustice or miscarriage of justice. The verbal directive merely asked the jurors to return to the jury room, deliberate, and return with a unanimous verdict. They had already been told in Instruction 11 that a verdict "must be unanimous." Thus, the verbal directive was consistent with Instruction 11 and told the jurors nothing new.

For the above reasons, this court holds the second additional instruction, considered separately or together with the trial court's verbal directive immediately after the first poll, warrants no plain error relief under Rule 30.20.

■ The only remaining complaint in Appellant's point relied on, as this court comprehends it, is that the trial court failed to confer with counsel and failed to determine "the deadlock of the jury" before giving the second additional instruction. That complaint, like the one just discussed, was not preserved, as it was not presented to the trial court by objection or motion for mistrial and was not raised in the motion for new trial.

---

**5.** The lawyer representing Appellant in this appeal is not Defense Counsel.

**6.** One reasonable inference from those omissions is that, contrary to Appellant's apparent belief, no second additional instruction was given.

*Ex gratia* review for plain error reveals no basis for reversal.

First, if Appellant's complaint that the trial court failed to determine "the deadlock of the jury" is a complaint that the court—after receiving the note—failed to call the jurors into the courtroom and inquire how they were numerically divided (without, of course, asking how many favored guilty verdicts and how many favored not guilty verdicts), it is obvious that such an inquiry would have served no purpose. The note clearly revealed that although all twelve jurors had originally voted to adopt verdicts convicting Appellant on both counts, juror Baker repudiated the verdicts during the first poll and the foreperson believed juror Baker would not, upon further deliberation, alter her position. Appellant fails to explain how, in those circumstances, he was harmed because the trial court, after receiving the note, failed to determine "the deadlock."

Second, if Appellant's complaint that the trial court's failure to "confer with counsel" before giving the second additional instruction is a complaint that Appellant was deprived of the opportunity to object or otherwise protect himself from the second additional instruction, the complaint does not warrant plain error relief. After the trial court informed counsel about the note and the second additional instruction at 3:30 p.m., the prosecutor, Defense Counsel and the court made an extensive record. Defense Counsel moved for a mistrial, but only on the ground that juror Baker's "wishes" should be respected and further deliberations "would not be fair." Defense Counsel had full opportunity to seek a mistrial on the ground that the second additional instruction was erroneous, but made no attack on it.

Furthermore, for the reasons set forth earlier, this court has found the second additional instruction itself caused no manifest injustice or miscarriage of justice.

The time spent by the jury in deliberation was not excessive, nor were the circumstances oppressive. The jury returned its unanimous verdicts at 4:25 p.m. after deliberating a total of four hours and fifty minutes. The verdicts came fifty-five minutes after the trial court read counsel the note.

Those circumstances are starkly different than the coercive proceedings in *State v. McNail,* 767 S.W.2d 84 (Mo.App. E.D. 1989), cited by Appellant. In *McNail,* after eight hours of deliberation on a Saturday, the first day of a three-day holiday, a deputy sheriff—at the trial court's direction—informed the jurors about 9:00 p.m. to prepare for an overnight stay in a hotel. *Id.* at 86. The deputy asked the jurors for telephone numbers of people who could bring the jurors a change of clothes and toiletries. *Id.* The jury returned a guilty verdict ten minutes later. *Id.*

Reversing the conviction in *McNail,* the appellate court emphasized the obvious: "The totality of the circumstances here bespeak coercion." *Id.* at [3].

No indicia of coercion appears in the trial court's benign conduct in the instant case.

The other cases cited by Appellant are too factually unlike the instant case to be controlling, hence this opinion need not be extended by discussing them.

This court holds the trial court did not abuse its discretion in refusing to grant a mistrial on the grounds presented by Defense Counsel. This court further holds Appellant is not entitled to plain error relief on the additional grounds presented in this appeal.

Judgment affirmed.

PARRISH, J., files Opinion Concurring in Part and Concurring in Result Reached.

SHRUM, J., files Concurring Opinion joining in Opinion Concurring in Part and Concurring in Result Reached filed by PARRISH, J.

JOHN E. PARRISH, Judge, concurring in part and concurring in result reached.

I concur in the principal opinion's holding that the trial court did not commit reversible error when, after the first time the jury was polled, it declined to accept the tendered verdicts and caused the jury to resume deliberations. I concur in the rationale by which that conclusion was reached. I concur in the result reached with respect to appellant's other complaints for the following reasons.

Apart from his complaint that a mistrial was not declared after the jury was first polled, appellant's point relied on is not concise in identifying events that occurred at trial that produced trial court error. As the principal opinion points out one may infer from the argument in appellant's brief that he believes the trial court conferred with or instructed the jury a second time. The trial transcript lends no credence to that belief. Either the trial court did not communicate with or otherwise instruct the jury a second time or, if it did, that communication or instruction is not disclosed by the transcript or legal file that makes up the record that is before this court. If the event occurred it was appellant's obligation to make a record of the event at the time it occurred and to furnish that record on appeal. *State* v. *Jennings,* 815 S.W.2d 434, 443 (Mo.App.1991). In the absence of such a record this court could not base a finding of error or prejudice based on the event. *State v. McCrary,* 963 S.W.2d 674, 678–79 (Mo. App.1998).

KENNETH W. SHRUM, Judge, concurring.

I join in the "OPINION CONCURRING IN PART AND CONCURRING IN RESULT REACHED" for the reasons stated therein.