**STATE of Missouri, Respondent,**

v.

**Jewell SAUNDERS, Appellant.**

**No. WD 70174.**

Missouri Court of Appeals,
Western District.

Aug. 10, 2010.

S. Kate Webber, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Mary H. Moore, Jefferson City, MO, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and ALOK AHUJA, JJ.

JAMES M. SMART, JR., Judge.

Jewell Saunders appeals his conviction of one count of kidnapping, one count of first-degree robbery, and one count of armed criminal action. He claims on appeal that a jury instruction coerced the guilty verdicts. The judgment is affirmed.

## Background

Saunders does not challenge the sufficiency of the evidence to support his convictions. The victim of the crimes charged in this case was a part-time real estate agent who will be referred to as "Ms. Agent" for purposes of this opinion. In early August 2006, Ms. Agent was contacted by a man who said his name was Ronald Pruitt. The man, later identified as Appellant Jewell Saunders, said he wanted to see some homes. Ms. Agent agreed to pick him up at a store in Grandview, and they rode together in her car to look at several properties. On the way to view the last property, Ms. Agent saw something shiny out of the corner of her eye. She looked over and saw that the man had a gun in his lap pointed toward her, with his hand on the trigger.

The man told Ms. Agent that he would not kill her if she did what he instructed. The man said that he needed about $1,000 or else "some guys" were going to kill him. The man told Ms. Agent to drive to her ATM. Ms. Agent was afraid to give the man money while she was still in the car with him, so she entered the wrong PIN several times and told him that her card would not work. The man became angry, said he needed to think, and they parked in an adjacent Price Chopper parking lot.

Ms. Agent suggested going into the grocery store, purchasing something with her

debit card, and obtaining cash back to give to the man. The man made Ms. Agent turn her cell phone off and instructed her to drive to a different grocery store that was about a mile away. The man told Ms. Agent not to "pull anything" or he would kill her and made her walk hand-in-hand with him into the liquor section of the store. Ms. Agent saw the man place the gun in the back of his waistband.

Ms. Agent was unable to get cash back at the grocery store, so they left. The man had her go to another liquor store, but that store did not give cash back, either. They returned to the Price Chopper, where the man instructed Ms. Agent to park some distance from the store. The man held Ms. Agent's hand as they entered the store. He had the gun in the back of his pants. After deliberately putting in the wrong PIN a few times, Ms. Agent was able to obtain only $50. She gave that money to the man.

Ms. Agent and the man went to make a second purchase at the Price Chopper in an effort to obtain more money. The manager informed them that they could receive cash back only once per day. When the man went to the end of the check-out conveyor belt to retrieve a Pepsi, Ms. Agent yelled "see you later" in a very loud voice. Several people turned to look at them, and the man left the store.

Ms. Agent left the store and did not immediately report the incident to the police. The next day, she told her real estate broker about the incident, and the broker convinced her to go to the police. The police subsequently released the Price Chopper surveillance video to news media. A caller identified the man as Jewell Saunders and gave his address. After police arrested Saunders, Ms. Agent identified him as the man who had kidnapped and robbed her.

Saunders proceeded to jury trial on one count of kidnapping, one count of first-degree robbery, and one count of armed criminal action. The jury subsequently announced that it had reached a verdict of not guilty in all three counts. At the request of the prosecutor, the court polled the jury. The court stated: "[W]hat I'm going to do is ask each of you starting at the back, Is this your verdict?" One juror responded: "Yes," ten jurors responded: "No," and one juror responded: "Yes, but I'm totally confused. I'm sorry." Needless to say, at that point everyone was confused.

The court consulted at the bench briefly with counsel. The judge stated that he was "at a total loss for words." The attorneys stammered. After considering, out of the presence of the jury, what to do about the results of the polling, the court indicated to counsel that it would ask the jury to continue deliberating and would provide it with new guilty and not guilty verdict forms. Defense counsel objected and asked the court to accept the not guilty verdicts and to declare a mistrial. The court denied the requests. The court brought the jury back in and gave the following instruction:

> Ladies and gentlemen of the jury, I've had the opportunity to confer with counsel. The Court received the verdict forms. However, when asked to poll the jurors individually, in doing so it seemed not to comport with the verdict forms in which the Court received, and I cannot accept this verdict.

> What I have done is to prepare new or blank verdict forms, and it's the Court's intent that we continue with deliberations until an unanimous verdict is reached, all 12 jurors. With that said, the Court is—will be in recess. The

jurors are instructed to go back to the jury room to continue with deliberations.

The jury retired to continue deliberations.

The jury eventually announced it had reached a verdict. The verdicts, as read aloud by the court, indicated that the jury had found Saunders guilty of kidnapping and first-degree robbery but not guilty of armed criminal action. The foreperson then said: "That's a mistake. I must have marked it wrong." The court patiently resubmitted a blank guilty verdict form and a blank not guilty form to the jury on the armed criminal action count. The jury then indicated to the court and parties that there were apparently typographical errors in the blank verdict forms that had been sent up to the jury. Corrected blank verdict forms were provided to the jury. The jury ultimately indicated it had reached a verdict as to the armed criminal action count and found Saunders guilty on that count. At the request of defense counsel, the court again polled the jury. The court asked each juror: "Is this your verdict?" Each juror responded: "Yes."

The judge sentenced Saunders to twenty-five years' imprisonment for kidnapping, twenty-five years' imprisonment for first-degree robbery, and fifteen years for armed criminal action, all to be served concurrently.

Saunders appeals.

### Discussion

In his sole Point on Appeal, Saunders claims the trial court plainly erred and abused its discretion when it instructed the jury to continue to deliberate until all twelve jurors reached a unanimous verdict. He says the court's instruction coerced the guilty verdicts because it virtually directed that a verdict be reached and implied that the court would hold the jury until a verdict was reached.

### Standard of Review

The assertion of instructional error is an issue of law, which we review *de novo*. *Powderly v. S. Cnty. Anesthesia Assocs., Ltd.*, 245 S.W.3d 267, 276 (Mo. App.2008). Here, the allegation is that the instruction to continue deliberations constituted error. Because there was no objection at the time to the court's instruction, the issue is before us as a request for relief based on plain error pursuant to Rule 30.20. The question of whether a verdict is coerced may be considered on a request for plain error review. *State v. Campbell*, 147 S.W.3d 195, 202 (Mo.App. 2004). Coercion of a verdict necessarily is a matter affecting substantial rights and would ordinarily involve issues of manifest injustice or miscarriage of justice. *See id.*

### Analysis

The jury retired to deliberate at 3:13 p.m. At 4:39 p.m., the jury asked to view the Price Chopper surveillance videotape and the lineup. The court then adjourned for the evening at the request of the jury. The next morning, the jury began deliberations at 8:30 a.m. The jury viewed the videotape in the courtroom with both counsel present but without the court present. At 8:47 a.m., the jury asked to see a closer version of the portion of the surveillance tape that they viewed. The jury viewed a clearer version of the Price Chopper surveillance tape at 9:19 a.m. At 10:31 a.m., the jury asked to see the listing for the homes the agent showed Saunders. The court provided those exhibits.

At 1:30 p.m., the jury announced that it had reached a verdict of not guilty in all three counts. After the inconclusive polling, the jury was sent back to the jury room while the court discussed the situation with counsel. The court instructed

the jury to "continue with deliberations until a unanimous verdict is reached, all 12 jurors." The jurors resumed deliberations at 2:04 p.m.

At 2:25 p.m., an individual juror made a request to speak with the trial judge. The judge sent back a response that it is the juror's duty to remember the evidence and follow the instructions and that it would be improper for the judge to talk to any of the jurors while the jury is deliberating. The court's response was delivered to the jury at 2:30 p.m. At 4:27 p.m., the jury asked to see the Price Chopper video again. The jury viewed the video in the courtroom as it had viewed it earlier. It resumed deliberations at 4:43 p.m.

At 6:01 p.m., the jury again announced it had reached a verdict. The verdicts, read aloud by the court, indicated that the jury had found the defendant guilty of kidnapping and first-degree robbery but not guilty of armed criminal action. The foreperson then said, "That's a mistake. I must have marked it wrong." The jury returned to the jury room and returned at 6:30 p.m. with a guilty verdict as to all three counts. Upon being polled, the jury agreed that the three guilty verdicts were correct.

■■■ Rule 29.01(d), provides that if, upon polling a jury, "there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged." "A verdict is considered coerced when under the totality of the circumstances it appears that the trial court was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *Campbell*, 147 S.W.3d at 202. "There are several factors that aid the courts in determining whether a jury's verdict was coerced," including: "(1) the amount of time the jury deliberates before and after the reading of the hammer instruction, (2) whether the trial court knows numerically how the jury is split and the position of the majority, and (3) whether the giving of the hammer instruction conforms with the Notes on Use." *Id.*

■■■ Coercion of a guilty verdict constitutes error. *State v. Burns*, 808 S.W.2d 1, 3 (Mo.App.1991). "A reversal is required if it is conceivable the challenged instruction coerced the jury into returning a verdict and nothing in the record is available to find otherwise." *Id.* "The rights of both parties to a fair trial and defendant's right to due process cannot be served if a verdict is coerced." *Id.*

Saunders complains that the jury was told that it would be detained until a unanimous verdict, agreed upon by all twelve jurors, was reached. He says the court should have told the jury that a hung jury was a possible and permissible outcome. Many of the cases Saunders cites involve situations where the jury indicated it could not agree on a verdict and was given an instruction responding to that inability. *See State v. Hayes*, 563 S.W.2d 11 (Mo. banc 1978); *Campbell*, 147 S.W.3d 195; *Johnson*, 948 S.W.2d 161; *Burns*, 808 S.W.2d 1 (Mo.App.1991). This case, however, does not involve a circumstance of the jurors having indicated that they could not agree on a verdict [1].

The jury indicated it had reached a verdict, but the polling indicated confusion about whether they had reached a verdict, or at least as to what the verdict was. The judge's statement that "it's the Court's

---

[1]. For this reason, it would not have been appropriate for the judge to give the "hammer" instruction, which may be appropriate "when the length of deliberation or communication from the jury causes the court to believe that the jury may be deadlocked." MAI–CR3d 312.10, Notes on Use 2.

intent that we continue with deliberations until a unanimous verdict is reached, all 12 jurors," read in isolation, could be construed as a directive that the jury had to reach a unanimous verdict. But in the light of the surrounding circumstances, it is inconceivable that the jury would believe that it was being told that it must return a unanimous verdict. Rather, it is clear the jury was being directed to return to the jury room and figure out where they had gone wrong in communicating their verdict, and further to determine whether in fact everyone was on board with the same verdict. The judge naturally and quite properly wanted them to try to reach a verdict if they could do so after discussing the matter. He was not calling for any of them to set aside their convictions if, after discussion and reflection, they remained convinced of their position.

It is routine to instruct jurors that they must all agree on a verdict. The quoted statement, viewed through the lens of plain error review, was not a command that the jury was not permitted to be a hung jury. If the defendant had believed at that time that the judge's comments were improper, he could have said so. The court, in response, could have taken extra pains to make sure the jury did not misunderstand. The court's instruction to the jury certainly did not suggest that the court preferred a particular verdict. This case falls more with the "line of cases [finding] no error when the judge makes a comment not requiring the jury to find a verdict, but merely to continue its deliberations." *Campbell,* 147 S.W.3d at 203. Because the jury's actions created an inconsistency, the judge sent the jury back to deliberate and resolve the inconsistency.

The jury deliberated for an additional four hours before reaching its verdict. The total time the jury deliberated in this case, while lengthy, was not unreasonably so: about eleven hours over two days. *Compare Burns,* 808 S.W.2d at 3 (factors suggesting a verdict may have been coerced included: inconsistent verdicts for the first and second count, the possibly coerced verdict being delivered quickly after the challenged instruction, the oral instruction contained a misstatement of fact and law, and the use of a non-MAI instruction).

This was an active jury that often communicated with the court. On the first day of deliberations, it requested permission to go home and continue deliberations the following day. After it was sent back for further deliberations, the jury asked to see additional evidence. It never asked the court whether it could be a hung jury. It never asked whether it would be made to continue deliberating if the jurors could not come to agreement. Nothing suggests that the jury felt it would be forced to deliberate or that any inconvenience would be visited upon them until a verdict was rendered.

Saunders notes that the only juror to unequivocally state that the not guilty verdicts were her verdicts asked to speak individually with the judge shortly after being sent back for further deliberations. He suggests that she wanted to ask the judge whether she had to vote guilty so that the jury could reach a verdict or whether she could disagree with the rest of the jury. This is pure speculation on Saunders's part. The jurors had their instructions to which they were to refer. Each juror, including this juror, affirmed his or her verdict when polled. "This court is aware of no case holding that an initial lack of unanimity among jurors in a criminal case bars the jurors from later reaching a unanimous verdict." *State v. Barnett,* 16 S.W.3d 699, 705 (Mo.App. 2000).

Despite the unusual occurrences in this case, Saunders has failed to meet his substantial burden to show that the judge mishandled the juror confusion or coerced a verdict. We see no indication of a manifest injustice or miscarriage of justice. The Point is denied.

## Conclusion

The judgment is affirmed.

All concur.