

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,             )

                )

         Respondent,      )   WD78191

                )

v.                )   OPINION FILED:  July 19, 2016

                )

ADRIAN E. ROBERSON,      )

                )

         Appellant.       )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Bryan Round, Judge

Before Special Division:  Patricia Breckenridge, Special Judge, Presiding, Alok Ahuja,
Chief Judge, and Cynthia L. Martin, Judge

Adrian E. Roberson ("Roberson") appeals from the trial court's judgment convicting him of one count of murder in the second degree, four counts of robbery in the first degree, and five counts of armed criminal action.  Roberson asserts that the trial court abused its discretion in failing to grant a mistrial because of jury coercion.  We affirm.

## Factual and Procedural Background

The State charged Roberson with one count of murder in the second degree for killing Brandon Sloan ("Sloan") during the perpetration of a robbery, four counts of robbery in the first degree for forcibly stealing the cell phones and money of four other individuals, and five counts of armed criminal action for using a deadly weapon to commit the murder and the robberies. Roberson does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the jury's verdicts,[1] the evidence at trial established the following:

On January 8, 2013, Roberson and Kelvin Taylor, Jr. ("Taylor") went to Sloan's house to buy marijuana. There were three other persons at the house. A fourth person arrived while Roberson and Taylor were at the house.

Roberson and Taylor went into the kitchen with Sloan. They attempted to buy marijuana with counterfeit money. Sloan said, "You got to be [expletive] kidding me." One person at Sloan's house saw that both Roberson and Taylor were pointing pistols at Sloan. Roberson then entered the living room and pointed a pistol at the four persons in Sloan's house. Roberson ordered everyone to lie down and to give him their cell phones and money.

Taylor and Sloan began to struggle. Taylor heard a gunshot. Taylor testified:

[W]hen I heard the gunshot, everything stopped. And when I looked at the ground to my left and I looked at the ceiling thinking that [Roberson] just gave off a warning shot or something like chill out. . . . .After that I looked

---

[1]*State v. Zetina-Torres*, 482 S.W.3d 801, 806 (Mo. banc 2016) (holding that, to determine whether evidence is sufficient to support a verdict, the evidence is viewed in the light most favorable to the State).

back at [Sloan] and seen that he was leaking blood. I looked back at [Roberson] and he was still drawing down on [Sloan].

Roberson and Taylor left Sloan's house. Sloan died from a single gunshot wound to the head.

Roberson's case was submitted to the jury at 11:35 a.m. At 3:39 p.m., the jury submitted a question: "Do we sign one verdict form for each count? What if we don't all agree?" The trial court instructed the jury to be guided by the instructions, "specifically with regard to the questions posed, Instruction No. 31."[2]

At 4:24 p.m., the jury returned guilty verdicts on all ten counts. Roberson requested that the jury be polled. When the trial court asked Juror Number 6, who was serving as the foreperson, whether the verdicts read were her verdicts, she paused and said, "I'm sorry." The trial court and Juror Number 6 then had the following exchange:

Trial court:    That's all right. Take the time that you need.

(Extended pause.)

Trial court:    Are you okay?

(Extended pause.)

Juror Number 6:     "I'm sorry."

Trial court:    You can't answer that, honestly?

Juror Number 6:     No.

Trial court:    These aren't your verdicts?

---

[2]Instruction No. 31 provided, in relevant part:
When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.
You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Juror Number 6:     I mean, are you saying that because I signed them or--?

Trial court:   Do you agree with the verdict on each one of these counts? There were ten counts that were presented.  Do you agree to the verdict on each of those ten counts?

Juror Number 6:     No.

The trial court conducted a bench conference with counsel and stated: "It's not a unanimous verdict, so we have to send them back up and resume the deliberations.  Do you have any record that you want to make or anything you want to say?"  Roberson's counsel said: "I, I, I don't know."  The trial court said: "I just, I mean if you have anything -- any record that you want to make, go ahead and make it, but I don't think that I have a choice because it's not a unanimous verdict."[3]   Roberson's counsel responded: "I understand."

The trial court then addressed the jury, instructing them to resume deliberations because verdicts have to be unanimous.  The jury returned to the jury room at 4:39 p.m.

At 5:12 p.m., Roberson's counsel asked to make a further record.  The trial court reopened the record outside of the hearing of the jury.  Roberson's counsel requested a mistrial "in light of the unusual situation."  The trial court denied the request but indicated how it intended to proceed:

[H]ere is my sense of how we are going to move forward.  I'm going to let them discuss this further until they decide that they don't want to discuss it

---

[3]Rule 29.01(d) provides that, "[i]f upon the poll [of the jury] there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."  Thus, the trial court technically had the option of discharging the jury, though nothing in the record indicates or suggests that the trial court would have been inclined to do so even had Roberson's counsel requested that relief.  In fact, in the absence of some compelling basis to discharge the jury, it is settled that "an initial lack of unanimity among jurors in a criminal case [does not] bar[] the jurors from later reaching a unanimous verdict." *State v. Saunders*, 318 S.W.3d 745, 750 (Mo. App. W.D. 2010); *see also State v. Barnett*, 16 S.W.3d 699, 705 (Mo. App. W.D. 2000) (holding where polled jurors indicated criminal verdicts were not unanimous, that the trial court "was obliged to reject the verdicts . . . and ask the jurors to deliberate further and return with unanimous verdicts").

4

or there is little budging. In any event, I don't think that I am going to hammer because at this point a hammer instruction would be overly coercive because we know exactly who we are going to be directing that at. I mean not only do we know how they stand because we read the verdicts, but we know exactly who is reluctant at this point to attest to the verdicts.

While the trial court was explaining its intentions, the jury indicated that it had a question. The jury asked: "Are alternates available if someone is emotionally unprepared and can't reach a verdict?" The question was signed by the foreperson, Juror Number 6. The trial court responded: "The alternate jurors have been dismissed and are unable to serve." Roberson's attorney agreed that the response was appropriate, but he nonetheless renewed his request for a mistrial. The request was denied. The trial court said:

All right, well there is some indication obviously that one of the jurors -- and it's kind of an odd situation because we know who that juror is -- that one of the jurors is having difficulty arriving at a verdict and we are getting close to a situation where I think further deliberation is unlikely to assist the jury in arriving at a verdict, but I don't think we are there yet.

The jury asked another question at 5:32 p.m. The jury note said: "We can't all agree. What do we do now?" Once again, the note was signed by the foreperson, Juror Number 6. Roberson's attorney renewed his request for a mistrial. The trial court denied the request and brought the jury back into the courtroom. The trial court asked Juror Number 6, in her capacity as the foreperson:

[Is it] just simply can the jury not agree on any of the ten counts or are there certain counts that you can agree to and certain counts that you cannot agree to?

Juror Number 6 responded: "Certain counts that we can agree and certain counts that we cannot." The trial court conferred with counsel outside the presence of the jury.

5

Roberson's counsel renewed his request for a mistrial, which request was denied. The trial court ultimately instructed the jury:

> All right, at this point I am going to prepare a new set of verdict forms, both guilty and not guilty, and send them back up with you. The counts that you can agree on, you will return those when you are prepared to do that. The counts that you can't agree on, we'll address that at that point. Okay, so go on back upstairs and as soon as I can get the printer to spit these out, I will have them sent up to you.

At 6:06 p.m., after receiving the new verdict forms, the jury asked: "Can we change our foreperson?" The note was signed by the foreperson, Juror Number 6. Roberson's counsel objected to any response and once again requested a mistrial. The request was denied. The trial court responded to the question, advising the jury: "You must be guided by the instructions as given, particularly Instruction No. 31."[4]

At 6:50 p.m., the trial court went back on the record with counsel, while the jury was still in deliberations, and made the following statement:

> I am making a management decision. If they really had verdicts on certain counts and not others, they would have been done by now. And I just think at this point we have reached the part of deliberations that -- I mean I have sat in my chambers and in the last 10 minutes I have heard voices raised. I know that nobody wants to try these things twice, but I think that we have reached the point of coercion and I am going to declare a mistrial.

The State objected, arguing that the jury had not yet come back indicating there was a problem or asking for direction. While addressing the State's objection, the jury indicated they had reached their verdicts.

---

[4]*See supra* note 2.

The jury returned to the courtroom. The jury found Roberson guilty on all ten counts. The jury was once again polled. All jurors, including Juror Number 6, indicated that the verdicts read were their verdicts.

The trial court accepted the verdicts, and set a date for sentencing. After the jury was released, the State noted for the record, and the trial court agreed, that the jury had advised that verdicts had been reached while the parties were still discussing the trial court's intent to declare a mistrial, and thus before a mistrial had actually been declared. Roberson's counsel did not disagree, but pointed out that "but for probably about thirty seconds or so," the case would have ended in a mistrial.

Roberson's subsequent motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial, argued that the trial court committed prejudicial error in overruling each of Roberson's requests for a mistrial. The trial court denied Roberson's post-trial motion. The trial court sentenced Roberson to twenty-five years imprisonment on each of the ten counts, with the sentences to run concurrently.

Roberson appeals.

## Analysis

In his single point on appeal, Roberson argues that the trial court abused its discretion in overruling his motions for mistrial[5] during jury deliberations because "the circumstances surrounding the jury's deliberations raised a doubt as to whether the jurors

---

[5]Roberson requested a mistrial on at least five occasions. His point on appeal does not identify the specific request or requests he claims were erroneously denied. Under the circumstances, we view the requests as cumulative, and analyze Roberson's point on appeal based on the state of the record at the time of the last request for a mistrial.

7

were able to render a unanimous verdict and demonstrated that at least one juror was coerced into rendering guilty verdicts" against Roberson. [Appellant's Brief, p. 13] Specifically, in the argument portion of his Brief, Roberson contends that Juror Number 6 was coerced by the other jurors during deliberations.[6]

"A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." *State v. Harris*, 477 S.W.3d 131, 138 (Mo. App. E.D. 2015). We review the refusal to grant a mistrial for abuse of discretion because the trial court, unlike a reviewing court, "has observed the complained of incident and is in a better position . . . to determine what prejudicial effect, if any, the alleged error had on the jury." *State v. McClendon*, 477 S.W.3d 206, 215 (Mo. App. W.D. 2015). "An abuse of discretion is found when the trial court's ruling is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.*

Roberson correctly observes that "[a] coerced verdict does not represent the jury's true unanimous concurrence." *Harris*, 477 S.W.3d at 139. Thus, coercion of a guilty verdict constitutes error. *State v. Steed*, 455 S.W.3d 479, 482 (Mo. App. E.D. 2015).

---

[6]"[T]he court . . . left [Juror Number 6] to fend for herself with the rest of the jury." [Appellant's Brief, p. 22] "As deliberations wore on, . . . questions . . . indicated that an increasing amount of coercion was taking place in the jury room." [Appellant's Brief, p. 22] "The jury's questions showed that the other jurors were not only disagreeing with [Juror Number 6], but were also personally attacking [Juror Number 6] in an effort to compel her to change her verdict." [Appellant's Brief, p. 23] "[T]he court . . . could hear the jury's raised voices. . . . [and] was finally convinced that the situation had developed into one of coercion." [Appellant's Brief, p. 23] "[T]he jury's foreperson was under attack by the rest of the jurors." [Appellant's Brief, p. 23] "[Juror Number 6] . . . was under coercion by her fellow jurors." [Appellant's Brief, p. 23]

This bedrock principle does not afford Roberson relief, however, unless he can demonstrate that his verdicts were "coerced," a legal principle with a settled meaning. "A verdict is considered coerced when under the totality of the circumstances it appears *that the trial court* was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *State v. Saunders*, 318 S.W.3d 745, 749 (Mo. App. W.D. 2010) (emphasis added). In short, "'[w]hen it appears from the circumstances that a verdict *is coerced by the court*, the verdict must be overturned.'" *State v. McNail*, 767 S.W.2d 84, 86 (Mo. App. E.D. 1989) (emphasis added) (quoting *State v. Rojano*, 519 S.W.2d 42, 44 (Mo. App. 1975)). "Jury coercion" thus presupposes trial court conduct which improperly invades the province of the jury to deliberate and reach (or not reach) a verdict. *See Brasfield v. United States*, 272 U.S. 448, 450 (1926) (holding that trial court inquiry into jury division "can rarely be resorted to without bringing to bear in some degree . . . an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded").

Here, Roberson does not argue that the trial court's decision to require the jury to resume deliberations after it was polled was coercive.[7] Roberson does not argue that the

---

[7]We have previously held that a trial court's instruction ordering jurors to resume deliberations is not coercive. In *Saunders*, after polling revealed that jury verdicts were not unanimous, the trial court instructed the jury to "continue with deliberations until a unanimous verdict is reached, all 12 jurors." 318 S.W.3d at 748-49. After five hours of additional deliberations, the jury reached guilty verdicts on all counts, and polling confirmed that the verdicts were unanimous. *Id.* at 749. The defendant argued on appeal that the jury's final verdicts were coerced because the trial court told the jury to continue with deliberations until a unanimous verdict was reached. *Id.* We disagreed because "it [was] clear the jury was being directed to return to the jury room and figure out where they had gone wrong in communicating their verdict, and further to determine whether in fact everyone was on board with the same verdict." *Id.* at 750. We noted that we were unaware of any "case holding that an initial lack of unanimity among jurors in a criminal case bars the jurors from later reaching a unanimous verdict." *Id.*

9

trial court's decision not to read the hammer instruction[8] was coercive.[9] Roberson does not argue that the trial court's handling of jury questions during resumed deliberations was coercive.[10] And Roberson does not argue that it was coercive for the trial court to accept the jury's verdicts reached after resumed deliberations, or that polling of the jury at that point revealed any basis to question Juror Number 6's affirmation that the verdicts announced were her own.

Rather, Roberson argues that the trial court should not have permitted deliberations to continue because the juror's questions during resumed deliberations permitted an inference that Juror Number 6 was feeling pressured by other jurors, and because the jury's heated discussions were overheard by the trial court. In other words, Roberson argues that once the trial court became aware that jury deliberations had become contentious, the failure to terminate the deliberations became coercive.

Our independent research has not revealed any authority for the proposition advanced by Roberson. In fact, Roberson's proposition disregards that disagreement among jurors is inherent in the deliberative process, a fact recognized by mandatory

---

[8]The hammer instruction, which is found at MAI-CR 3d 312.10, reads:

"You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt."

[9]*Cf. State v. Bracken,* 333 S.W.3d 48, 55-57 (Mo. App. E.D. 2010) (holding that jury's guilty verdict on two of sixteen counts was not coerced when trial court directed jury to resume deliberations without giving the cautionary hammer instruction, though the trial court knew after the jury was polled following return of guilty verdicts on all sixteen counts that one juror would not affirm the verdicts as her own).

[10]On this point, when Juror Number 6 advised the trial court that agreement had been reached on some, but not all, of the verdicts, the trial court instructed the jury on the "counts that you can agree on, you will return those when you are prepared to do that. The counts that you can't agree on, we'll address that at that point." In other words, the trial court afforded the jury the freedom *not* to reach unanimous verdicts on all counts. Despite this fact, the jury reached unanimous verdicts on all ten counts.

10

criminal jury instructions. MAI-CR 3d 302.01 instructs the jury: "It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence." MAI-CR 3d 302.05 further instructs the jury: "You will . . . discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors." Even MAI-CR 3d 312.10, the hammer instruction given in a trial court's discretion when a jury is deadlocked, instructs each juror to "respect the opinions of your fellow jurors" and to "not be afraid to change your opinion if the discussion persuades you that you should."

These instructions underscore that each juror's task is to listen to the evidence, to independently draw inferences from the evidence, and to discuss his or her views with other jurors. These instructions also underscore that disagreement, even strident disagreement, is an inevitable part of the deliberative process. *See State v. Copple*, 51 S.W.3d 11, 14 (Mo. App. W.D. 2001) (holding that hammer instruction "'urges frank and open discussion'") (quoting *State v. Jackson*, 896 S.W.2d 77, 80 (Mo. App. W.D. 1995)).

We thus decline Roberson's invitation to expand "jury coercion" to include a trial court's failure to terminate contentious jury deliberations.[11] To rule otherwise would not only disregard the inherent nature of jury deliberations, but would also necessitate the

---

[11]It is important to differentiate between jury coercion, and a trial court's separate discretion to declare a mistrial when, based on all of the circumstances, the trial court believes a jury is deadlocked. *See State v. Fassero*, 256 S.W.3d 109, 115 (Mo. banc 2008) (citing *United States v. Perez*, 22 U.S. 579, 580 (1824). Here, Roberson does not argue that the trial court abused its discretion in failing to declare a mistrial because the jury was deadlocked.

disregard of that which is generally sacrosanct -- the privacy of juror deliberations. *See Anderson v. State*, 402 S.W.3d 86, 93 (Mo. banc 2013) (noting that "[j]urors may speak only through their verdict"); *State v. Bolden*, 371 S.W.3d 802, 805 n.2 (Mo. banc 2012) ("'Juror testimony is improper if it merely alleges that jurors acted on improper motives, beliefs, or mental operations, also known as matters inherent in the verdict.' ***Matters inherent in the verdict include*** . . . '***a juror not joining in the verdict*** . . . .'") (quoting *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 87, 87 n.4 (Mo. banc 2010) (emphasis added)).[12]

The trial court's denial of Roberson's request for a mistrial was not an abuse of discretion. Roberson's point on appeal is denied.

## Conclusion

The trial court's judgment is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

[12]A narrow exception to this rule was recognized in *Fleshner* where our Supreme Court recognized that "testimony about juror statements during deliberations evincing ethnic or religious bias or prejudice" may be heard to determine if the right to trial by a fair and impartial jury has been violated. 304 S.W.3d at 88, 89-90. This narrow exception does not implicate the principle of "jury coercion," and in any event, is not applicable here.