

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| vs. | )    No. SD34005 |
| | ) |
| DUSTIN M. HICKS, | )    **Filed:  November 22, 2016** |
| | ) |
| Defendant-Appellant. | ) |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Circuit Judge

**<u>AFFIRMED</u>**

A jury found Dustin M. Hicks ("Defendant") guilty of three crimes:  attempted rape in the first degree, assault in the second degree, and armed criminal action.  All three crimes arose out of Defendant's conduct during an arranged meeting with a prostitute. The trial court sentenced Defendant as a prior and persistent offender to imprisonment for ten years for attempted rape, twelve years for assault and three years for armed criminal action with the ten and twelve-year sentences to run consecutive to one another and the three-year sentence to run concurrently with the other sentences.  Defendant appeals raising two points of asserted trial court error:  (1) the trial court abused its discretion in denying Defendant's motion for mistrial based on the jury's knowledge that the jury

1

would have been permitted to ask witnesses questions but for defense counsel's objection to that procedure, and (2) the trial court plainly erred in not declaring a mistrial *sua sponte* when a question from the jury indicated the jury's deliberations had become contentious following a poll of the jury in which a juror stated guilty verdicts returned by the jury were not the juror's verdicts. We reject Defendant's points, and affirm the trial court's judgment.

## Standard of Review

> "A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." *State v. Harris*, 477 S.W.3d 131, 138 (Mo.App.E.D.2015). We review the refusal to grant a mistrial for abuse of discretion because the trial court, unlike a reviewing court, "has observed the complained of incident and is in a better position . . . to determine what prejudicial effect, if any, the alleged error had on the jury." *State v. McClendon*, 477 S.W.3d 206, 215 (Mo.App.W.D.2015). "An abuse of discretion is found when the trial court's ruling is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.*

*State v. Roberson*, No. WD 78191, 2016 WL 3960989, at *4 (Mo.App. W.D. July 19, 2016). "[P]lain errors affecting substantial rights may be considered in the discretion of the [appellate] court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.[1]

## Analysis

*Point I – Denial of Request for Mistrial Based on Trial Court's Conduct Relating to Juror Questions*

In his first point, Defendant argues that "[t]he trial court abused its discretion in denying [Defendant's] motion for mistrial" because (1) the jury "would hold it against"

---

[1] All rule references are to Missouri Court Rules (2016).

2

Defendant that the jury would not be permitted to ask questions during the trial because defense counsel objected to questions by jurors, and (2) the trial court's "procedure . . ., as well as . . . comments . . . before and after the request for the mistrial, were of such a nature as would reasonably tend to prejudice the minds of the jury against" Defendant.

Immediately after the jury was sworn at Defendant's trial, the following occurred:

> [THE COURT:]  Now, I'm going to read the instructions, but part of the second instruction is not in your notebooks.  The first one is not in there at all.  What we call Instruction No. 1 is in there except for the last part.  And here's why it's not in there yet.  I've been doing this for about 18 years.  Right after I went on the bench, I went to the National Judicial College for three weeks and learned about judging and what other states do.  I did not know in all my years of practice, because I hadn't paid attention to other states, that about half the states in the United States do things like let you take notes, let you ask questions of the witnesses, which was a novel concept for Missouri.  So when I came back, I started letting jurors in civil cases ask questions.  And then I was on the civil jury study committee that actually formulated the instruction for them.  I've been hesitant to ever do it in criminal cases because people tell me it might get reversed.  I don't think we are, but I've decided it's time to let you guys ask questions, and there's an instruction in here that tells you how you get to do that.
> [DEFENSE COUNSEL]:  Judge, I think we need to approach.
> THE COURT:  No, you don't.  I'll read the instruction; then you can approach.  You should have brought this up before they came up.
> [DEFENSE COUNSEL]:  It wasn't brought to my attention that this was going to happen today, Judge.
> THE COURT:  Okay.  We'll be back.

At that point, counsel approached the bench out of the hearing of the jury.  The trial court explained to defense counsel that the trial court believed it had given defense counsel's office notice of its intention to permit jurors to ask questions in criminal cases, and also recently had mentioned its intention in the courtroom.  Defense counsel told the trial court that defense counsel had not received notice from her office of the trial court's intention to permit juror questions, and did not hear the trial court announce its intention

3

in the courtroom.  The trial court then returned the trial to the hearing of the jury, and took a short recess.

Following the recess and before the jury returned to the courtroom, defense counsel requested a mistrial because the jury "will hold it against us that we're not letting any questions be asked in this case."  Following a discussion between the trial court and defense counsel with respect to the trial court's intended procedure for juror questions in future criminal cases, the trial court stated that it would not permit juror questions in Defendant's case.  The following exchange then occurred:

> THE COURT:  Anything else before I bring the jury?  Oh, I'm overruling your motion for mistrial.
> [DEFENSE COUNSEL]:  But you are granting my request for a clarifying instruction?
> THE COURT:  I'm going to tell them.
> [DEFENSE COUNSEL]:  Okay.

When the jury returned to the courtroom, the trial court instructed the jury:  "Please be seated.  Okay.  You are not going to be allowed to ask questions of witnesses.  The next trial we will, but not this one."  Defense counsel did not object to the trial court's instruction to the jury.

The trial court then read to the jury initial jury instructions for the trial.  These instructions included the following statements:

> It is the court's duty to enforce [established rules for those who participate in a jury trial] and to instruct you upon the law applicable to the case.  It is your duty to follow the law as the court gives it to you.
> However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are.  It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence.
>
> . . . .

From time to time the attorneys may make objections. They have a right to do so and are only doing their duty as they see it. You should draw no inference from the fact that an objection has been made.

As described in **State v. Jackson**, 836 S.W.2d 1, 6-7 (Mo.App. E.D. 1992), long settled law in Missouri is that:

The standard of review for examining the conduct of a trial judge is whether the trial court's conduct is such as to prejudice the minds of the jury against the defendant thereby depriving the defendant of a fair and impartial trial. *State v. Koonce*, 731 S.W.2d 431, 441 (Mo.App.1987), quoting *State v. Puckett*, 611 S.W.2d 242, 244 (Mo.App.1980). Whether there was prejudice depends on the context and words in each case. *State v. Koonce*, 731 S.W.2d at 441. The trial court must maintain a position of absolute impartiality, avoid any conduct which might be construed as indicating a belief on the part of the judge as to the guilt of the defendant. *Id*. Moreover, a judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality. *State v. Clay*, 763 S.W.2d 265, 268 (Mo.App.1988).
    This does not mean, however, that the trial judge may not correct counsel, when necessary, as long as it is not done in a contemptuous manner, or that he may not summarize evidence in explaining a ruling, as long as it is not a statement of facts as a matter of law. *State v. Thomas*, 791 S.W.2d [861,] 863[ (Mo.App. 1990)]. Moreover, a trial judge may question witnesses in order to clarify testimony. *State v. Clay*, 763 S.W.2d at 268. The judge, in so doing, must not indicate a belief in either the guilt or innocence of the accused. *State v. Koonce*, 731 S.W.2d at 441, quoting *State v. Montgomery*, 363 Mo. 459, 251 S.W.2d 654 (1952). Nor may the judge let such belief be reflected or even conjectured by the jury in his treatment of either counsel. *State v. Koonce*, 731 S.W.2d at 441. The factors used to determine the propriety of any comment include whether the trial judge volunteered the comment, whether the comment was made in response to an objection as part of the court's ruling, whether the comment was made in the jury's presence and whether the jury could have construed the comment to prejudice the defendant. *Id*.
    There is no error as long as the trial judge does not express an opinion as to the nature, content or truthfulness of evidence. *State v. Thomas*, 791 S.W.2d at 863. Finally, the propriety of a trial judge's comments depend[s] largely upon his tone of voice, facial expressions and other similar factors which give content to the trial episodes and the rulings thereon. *Id*. Since those factors are not reflected in the record on appeal, we must largely defer to the trial court's superior vantage point to appraise the trial situation. *Id*.

Although the challenged comments were certainly not in MAI and did not follow any procedure as far as the question whether jurors should be allowed to take notes in criminal cases, under the facts of this case, the trial court's comments before the jury (1) preceded the presentation of any evidence, (2) related solely to a procedural question of whether jurors would be permitted to ask questions of witnesses during the trial and not to Defendant's guilt or innocence or the truthfulness or importance of any specific evidence, (3) did not appear on their face to be contemptuous of defense counsel, and (4) could not have been construed to indicate the trial court believed that Defendant was guilty or that, as yet unpresented, evidence was truthful or untruthful. Further, the trial court's comments were followed immediately by instructions that informed the jury (1) no statement, ruling, or remark that the trial court may make during the trial is intended to indicate the trial court's opinion of what the facts are, and (2) attorneys have a right to object, and the jury should draw no inference from the fact that an objection has been made. We further note that defense counsel did not request a specific curative instruction at the beginning of the trial and did not object to the court's statement.

In these circumstances, the trial court did not abuse its discretion in denying Defendant's request for a mistrial. Defendant's first point is denied.

*Point II – Jury Coercion*

In his second point, Defendant claims that, following a poll of the jury in which Juror No. 9 indicated that the guilty verdicts returned were not her verdicts and the jury's resumption of deliberations, the "trial court plainly erred in failing to declare a mistrial *sua sponte*" when the jury asked "if a juror unwilling to vote could be replaced with an

6

alternate juror" because the question "shows that the ultimate guilty verdicts were not free from any taint, and they do not represent the jury's true unanimous concurrence."

After slightly less than two hours of deliberations, the jury returned verdicts of guilty on all three counts (attempted rape in the first degree, assault in the second degree, and armed criminal action). After the trial court read the verdicts, the following exchange occurred:

> [THE COURT:] Ma'am, that is -- did I read the verdicts correctly?
> THE FOREPERSON: That's correct.
> THE COURT: And were they all unanimous?
> THE FOREPERSON: Yes, sir.
> THE COURT: [Prosecutor], anything else before I release the jury?
> [PROSECUTOR]: No, Your Honor.
> THE COURT: [Defense counsel], anything else before I release the jury?
> [DEFENSE COUNSEL]: Yes, Judge. If I could have the jury polled, please.
> THE COURT: Polling means I'm going to read your name, and then just answer those – if that is your verdict or not.
> I'm going to mispronounce it, but I think it's [Juror No. 9].
> JUROR [NO. 9]: [Juror No. 9 pronounced her last name].
> THE COURT: Is that your verdict?
> JUROR [NO. 9]: No.
> THE COURT: Okay. You guys need to go back. You have to go with the bailiff.
> (The jury left the courtroom and returned to their deliberation room at 4:20 p.m.)
> THE COURT: Let's go on the record. I'm going to bring them back in a minute and [sic] them that since one of them said that that was not a correct verdict that they shall continue deliberating until they reach a verdict.
> I'll need, though, probably three [new verdict directors] . . . .
> (A recess was taken from 4:22 p.m. until 4:28 p.m.)
>                   IN THE PRESENCE OF THE JURY
> THE COURT: We have prepared three new verdict directors that are blank for the ones that you returned that were not unanimous. I'm going to give those to John, and we'll have you go back and start deliberating again.
> So if you'll go with John, please.

7

Less than twenty-five minutes later, the jury asked two questions as reflected in the following exchange between the trial court and counsel:

> THE COURT: Okay. Here are the two questions: What is the process if we are unable to come to a unanimous vote on the verdict?
> The second question is: Can we replace a juror unwilling to vote with the alternate juror?
> I'm going to put in there you can -- I can give you no further instructions.
> Any objection to that answer on both of them, [Prosecutor]?
> [PROSECUTOR]: No, Your Honor.
> THE COURT: [Defense counsel]?
> [DEFENSE COUNSEL]: No, Your Honor.

Less than twenty minutes later, the jury again returned verdicts of guilty on all three counts. After reading the verdicts, the trial court polled the jury and then accepted the verdicts noting that all twelve jurors "answered that those were their verdicts."

The jury had been instructed before it began deliberations that:

> Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case.
>
> . . . .
>
> When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.
> You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.
> Your verdict, whether guilty or not guilty, must be agreed to by each juror.
>
> . . . .
>
> You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.
> It is your duty, and yours alone, to render such verdict under the law and the evidence as in your reason and conscience is true and just.

8

The Western District recently rejected a preserved claim similar to Defendant's unpreserved claim and on facts similar to the facts in this case in *State v. Roberson*, No. WD 78191, 2016 WL 3960989 (Mo.App. W.D. July 19, 2016). In *Roberson*, the jury foreperson, on being polled, stated the guilty verdicts returned by the jury were not the foreperson's verdicts. *Id.* at *2. After the trial court instructed the jury to resume deliberations as permitted by Rule 29.01(d), *Id.*, the following events occurred over a little more than the next two hours. The jury first asked "[a]re alternates available if someone is emotionally unprepared and can't reach a verdict?" *Id.* The jury next sent a note stating "[w]e can't all agree. What do we do now?" *Id.* at *3. The trial court brought the jury back into the courtroom and asked whether the jury was unable to agree on "any" of the counts before it or were there "certain counts" the jury could agree on and "certain counts" the jury could not agree on to which the foreperson replied "[c]ertain counts that we can agree and certain counts that we cannot." *Id.* The trial court instructed the jury to resume deliberations. *Id.* The jury then asked, "[c]an we change our foreperson?" Subsequently, just before the jury again returned guilty verdicts and, on being polled, confirmed that the verdicts were their verdicts, the trial court observed, "I have sat in my chambers and in the last 10 minutes I have heard voices raised." *Id.*

On these facts, the Western District "decline[d] Roberson's invitation to expand 'jury coercion' to include a trial court's failure to terminate contentious jury deliberations." *Id.* at *6 (footnote omitted). In so holding, the Western District also stated:

> Roberson correctly observes that "[a] coerced verdict does not represent the jury's true unanimous concurrence." *Harris*, 477 S.W.3d at

9

139. Thus, coercion of a guilty verdict constitutes error. *State v. Steed*, 455 S.W.3d 479, 482 (Mo.App.E.D.2015).

This bedrock principle does not afford Roberson relief, however, unless he can demonstrate that his verdicts were "coerced," a legal principle with a settled meaning. "A verdict is considered coerced when under the totality of the circumstances it appears *that the trial court* was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *State v. Saunders*, 318 S.W.3d 745, 749 (Mo.App.W.D.2010) (emphasis added). In short, "'[w]hen it appears from the circumstances that a verdict *is coerced by the court*, the verdict must be overturned.'" *State v. McNail*, 767 S.W.2d 84, 86 (Mo.App.E.D.1989) (emphasis added) (quoting *State v. Rojano*, 519 S.W.2d 42, 44 (Mo.App.1975)). "Jury coercion" thus presupposes trial court conduct which improperly invades the province of the jury to deliberate and reach (or not reach) a verdict. *See Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926) (holding that trial court inquiry into jury division "can rarely be resorted to without bringing to bear in some degree ... an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded").

*Id.* at \*4. And:

Our independent research has not revealed any authority for the proposition advanced by Roberson [(i.e., "that once the trial court became aware that jury deliberations had become contentious, the failure to terminate the deliberations became coercive")]. In fact, Roberson's proposition disregards that disagreement among jurors is inherent in the deliberative process, a fact recognized by mandatory criminal jury instructions. MAI-CR 3d 302.01 instructs the jury: "It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence." MAI-CR 3d 302.05 further instructs the jury: "You will . . . discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors." Even MAI-CR 3d 312.10, the hammer instruction given in a trial court's discretion when a jury is deadlocked, instructs each juror to "respect the opinions of your fellow jurors" and to "not be afraid to change your opinion if the discussion persuades you that you should." These instructions underscore that each juror's task is to listen to the evidence, to independently draw inferences from the evidence, and to discuss his or her views with other jurors. These instructions also underscore that disagreement, even strident disagreement, is an inevitable part of the deliberative process. *See State v.*

10

*Copple*, 51 S.W.3d 11, 14 (Mo.App.W.D.2001) (holding that hammer instruction "'urges frank and open discussion'") (quoting *State v. Jackson*, 896 S.W.2d 77, 80 (Mo.App.W.D.1995)).

***Id***. at \*6.

The trial court did not err, either plainly or otherwise, and did not abuse its discretion, in not declaring a mistrial *sua sponte* on the basis that disagreement among the jurors constituted jury coercion that prevented the jury from reaching a unanimous decision. Defendant's second point is denied.

The trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, P.J. - Concurs

Daniel E. Scott, J. - Concurs